STATE OF CONNECTICUT *v.* CLIFTON KNIGHT, JR.
(SC 16980)

Sullivan, C. J., and Borden, Katz, Vertefeuille and Zarella, Js.

---

Argued October 22—officially released December 9, 2003

*Edward T. Murnane, Jr.*, with whom, on the brief, was *Gary A. Mastronardi*, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Michael Gailor*, assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. This appeal[1] arises from a procedurally unique criminal trial, wherein two counts of the criminal information were decided by the jury and a third count was decided separately by the court. The defendant, Clifton Knight, Jr., appeals from the judgment of conviction of criminal possession of a firearm in violation of General Statutes § 53a-217.[2] The defendant claims that the trial court improperly denied his motion for judgment of acquittal because: (1) the trial court was collaterally estopped from finding that the defendant had possessed a firearm because the jury had found the defendant not guilty of the related crime of carrying a

---

[1] The defendant appealed from the judgment of conviction to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) has been convicted of a felony . . . . For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

Section 53a-217 (a) was amended subsequent to December, 1999, the time of the defendant's alleged offenses, by the addition of two new subdivisions. See Public Acts 2001, No. 01-130, § 15. Those changes are not relevant here. For purposes of clarity, we refer herein to the current revision of the statute.

General Statutes § 53a-3 (19) defines "firearm" as "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ."

pistol or revolver without a permit in violation of General Statutes § 29-35 (a);[3] (2) the verdict of the trial court, finding the defendant guilty of criminal possession of a firearm, was impermissibly inconsistent with the jury verdict, finding the defendant not guilty of carrying a pistol or revolver without a permit; and (3) the judgment of conviction was contrary to the sound administration of justice. We reject the defendant's claims and, accordingly, affirm the judgment of the trial court.

The record reveals the following facts and procedural history. On the evening of December 8, 1999, the victim, Nigel Garcia, was shot and killed as he exited a restaurant on Albany Avenue in Hartford. The defendant subsequently was charged with the victim's murder in violation of General Statutes § 53a-54a (a),[4] carrying a pistol or revolver without a permit in violation of § 29-35 (a),[5] and criminal possession of a firearm by a convicted felon in violation of § 53a-217 (a) (1).[6] The defendant pleaded not guilty to all three counts and elected a jury trial. Shortly before trial, however, the defendant waived his right to a jury trial on the criminal possession count only, and elected to have that count decided by

[3] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

Section 29-35 (a) was amended subsequent to December, 1999, however, the portion of subsection (a) relevant in this case had only one minor technical change regarding the gender neutral language. See Public Acts 2003, No. 03-19, § 68; see also Public Acts 2001, No. 01-130, § 9; Public Acts 2000, No. 00-99, § 77. For purposes of clarity, we refer herein to the current revision of the statute, as amended.

General Statutes § 29-27 defines the terms "pistol" and "revolver" as "any firearm having a barrel less than twelve inches in length."

[4] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[5] See footnote 3 of this opinion for the text of § 29-35 (a).

[6] See footnote 2 of this opinion for the text of § 53a-217 (a) (1).

the trial court.[7] The trial court agreed, at the request of the defendant, to delay rendering its verdict on the criminal possession count until the jury had returned its verdict on the other counts.

At trial, the jury and the trial court heard all of the evidence and arguments concurrently, with the exception of the defendant's prior felonies, which were relevant only to the criminal possession count and thus were heard solely by the trial court outside the presence of the jury.[8] The jury returned its verdict, finding the defendant not guilty of both murder and carrying a pistol or revolver without a permit. Immediately thereafter, the trial court returned a verdict of guilty on the count of criminal possession of a firearm. The court explained that, in reaching its verdict, it had credited the testimony of Carl McQuillar, a witness for the state who had testified, in the presence of both the trial court and the jury, that he had seen the defendant carrying a pistol on the evening of December 8, 1999.

The defendant filed a motion for judgment of acquittal, claiming that the trial court was collaterally estopped from finding that he had possessed a firearm, and that the verdict of the trial court was impermissibly inconsistent with the jury verdict, which had found the defendant not guilty of carrying a pistol or revolver without a permit. The trial court denied the defendant's motion for judgment of acquittal on both grounds. The trial court subsequently sentenced the defendant to the

---

[7] In his brief to this court, the defendant explained that his reason for waiving his right to a jury trial on the count of criminal possession of a firearm by a convicted felon was "in order to avoid the risk of prejudice . . . which might arise once the jury learned of the defendant's prior felony record . . . ."

[8] The parties stipulated that the defendant did not have a permit to carry a pistol or revolver. Therefore, the evidence presented to both the jury and the trial court concerned only the issue of whether he had carried a pistol or revolver or had possessed a firearm.

statutory maximum term of five years imprisonment. This appeal followed.

## I

The defendant first claims that, because the jury had found him not guilty of carrying a pistol or revolver without a permit, the trial court was collaterally estopped from finding that he had possessed a firearm. Specifically, the defendant's claim rests upon the assumption that the deliberations of the jury and the trial court constituted separate, albeit simultaneous, proceedings. The state contends, to the contrary, that the doctrine of collateral estoppel does not apply in this case because the jury and the trial court had rendered their verdicts within the same proceeding. We agree with the state.

The defendant's claim concerns the collateral estoppel branch of double jeopardy jurisprudence. See *Ashe* v. *Swenson*, 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970); *State* v. *Crawford*, 257 Conn. 769, 780, 778 A.2d 947 (2001) (fifth amendment guarantee against double jeopardy embodies collateral estoppel as constitutional requirement), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002). "Collateral estoppel is given constitutional dimensions by the double jeopardy clause. *State* v. *Aparo*, [223 Conn. 384, 388, 614 A.2d 401 (1992), cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 1415, 122 L. Ed. 2d 785 (1993)]. In a criminal case, collateral estoppel is a protection included in the fifth amendment guarantee against double jeopardy. *State* v. *Hope*, 215 Conn. 570, 584, 577 A.2d 1000 (1990), cert. denied, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991)." (Internal quotation marks omitted.) *State* v. *Crawford*, supra, 780–81. "Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties

in any future lawsuit. *Ashe* v. *Swenson*, supra, [443]." (Internal quotation marks omitted.) *State* v. *Crawford*, supra, 781. "To establish whether collateral estoppel applies, the court must determine what facts were necessarily determined *in the first trial*, and must then assess whether the government is attempting to relitigate those facts *in the second proceeding*. . . . A defendant who seeks to protect himself from being retried pursuant to the principles of collateral estoppel carries the burden of establishing that the issue he seeks to foreclose from consideration in the second case was necessarily resolved in his favor in the prior proceeding." (Emphasis altered; internal quotation marks omitted.) Id.

"The principles enunciated in *Ashe* . . . clearly contemplate a relitigation of factual issues. See [*Ashe* v. *Swenson*, supra, 397 U.S. 443–44]. The existence of a prior judgment has been described as the 'linchpin' of that decision, and subsequent case law has stressed the requirement of a previous trial." *Copening* v. *United States*, 353 A.2d 305, 310 (D.C. App. 1976). In *Copening*, the District of Columbia Court of Appeals concluded that the doctrine of collateral estoppel does not apply to "the procedurally unique situation in which several criminal charges against the same defendant have been allocated between two triers for concurrent adjudication upon virtually identical evidence." Id., 312.

The defendant in *Copening* had been charged with three offenses: carrying a pistol without a license, possession of an unregistered firearm and possession of ammunition for an unregistered firearm. Id., 307. The first of these offenses was a statutory offense, to which the constitutional right to a jury trial had attached. The remaining two offenses were regulatory offenses, for which there was no right to a jury trial. Consequently, the defendant's case proceeded to trial before both the jury and the trial court as triers of fact, with the jury

deciding the statutory count and the trial court deciding the two regulatory counts. Id., 308. The jury acquitted the defendant of the statutory offense of carrying a pistol without a license. Notwithstanding the jury's verdict, the trial court found the defendant guilty of the two regulatory offenses of possession of an unregistered firearm and possession of ammunition for an unregistered firearm. Id. On appeal, the defendant contended that the trial court had been collaterally estopped from rendering its guilty verdicts. The District of Columbia Court of Appeals disagreed, however, holding instead that the doctrine of collateral estoppel did not apply because the defendant had been "tried in a single proceeding, in which the adjudications as to his guilt were to be rendered by concurrent as opposed to successive triers." Id., 310. The court explained: "Both decisions were announced in the same proceeding, one immediately following the other. More importantly, despite the existence of two triers, the trial was in fact a single, unified hearing. The adversaries were required to present their cases but a single time. Both triers were exposed simultaneously to the same evidence and arguments, and they reached their respective conclusions through simultaneous, albeit, separate, deliberations. We therefore do not accept [the defendant's] assertion that the existence of two triers rendered the proceeding, in effect, 'two trials.'" Id., 310–11.

We find the reasoning of *Copening* persuasive, and adopt it in the present case. The trial in the present case presented a procedural situation strikingly similar to the one in *Copening*. Like the proceeding in *Copening*, the proceeding in this case was "a single, unified hearing." Id., 310. The state was given only one opportunity to present its case against the defendant, and the defendant was required to present his case but a single time. Both the jury and the trial court *simultaneously* were presented with the arguments and the evidence,

with the exception of the evidence of the defendant's prior convictions that was withheld from the jury. Moreover, both triers reached their decisions in *simultaneous* deliberations, and those decisions were announced within the same proceeding, with the verdict of the trial court immediately following that of the jury. Accordingly, we conclude that the defendant's criminal trial was a single proceeding, and therefore that the doctrine of collateral estoppel does not apply.[9]

## II

We next address the defendant's second claim, namely, that the verdict of the trial court, finding the defendant guilty of criminal possession of a firearm, is impermissibly inconsistent with the jury verdict that found the defendant not guilty of carrying a pistol or revolver without a permit. We disagree.

The defendant first claims that the verdicts of the trial court and the jury were inconsistent as a matter

---

[9] The defendant attempts to distinguish *Copening* from the present case on grounds that the charges presented to the trial court in *Copening* were minor regulatory offenses, to which there was no right to a jury trial, and that the trial court in that case could have decided those charges either before or after the jury had returned a verdict on the statutory offense. These distinctions, however, are of no moment. The court in *Copening* grounded its decision on the facts that the underlying trial had been presented simultaneously to both triers of fact, the triers of fact simultaneously had deliberated, and the triers had delivered their verdicts within the same proceeding, one immediately following the other. *Copening* v. *United States*, supra, 353 A.2d 310. The court in *Copening*, moreover, expressly stated that, even if the trial court had rendered its decision before the jury had rendered its verdict, the outcome would have been the same: "The trial judge correctly noted that he would have been able to announce his conclusions as to the regulatory offenses before the jury returned its verdict. While such a sequence may be the preferable procedure, theoretically it would be equally susceptible to [the defendant's] objections . . . . The answer, of course, is that the traditional concern of the collateral estoppel doctrine is not with the outcome of a decisional race between different triers, but with the need to protect a party from the rigors of twice litigating the same issue. See *Ashe* v. *Swenson*, [supra, 397 U.S. 445–47]. See also *Green* v. *United States*, 355 U.S. 184, 187–90, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957)." *Copening* v. *United States*, supra, 310 n.10.

of law. "The issue of legal inconsistency typically arises when a defendant is convicted of two offenses that contain contradictory elements.[10] Such verdicts are legally inconsistent if the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted. . . . [T]he defendant was convicted of one offense and acquitted of the other. [Because the court is] not dealing with a situation in which the defendant is convicted of two offenses, and one conviction negates the other, the verdicts are not legally inconsistent in the usual sense. . . .

"[W]here the inconsistent verdicts claim involves a simultaneous conviction and acquittal on different offenses, the court, in testing the verdict of guilty for inconsistency as a matter of law, is necessarily limited to an examination of the offense charged in the information and the verdict rendered thereon without regard to what evidence the jury had for consideration. . . . If the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other." (Citations omitted; internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 244, 745 A.2d 800 (2000).

A defendant may be found guilty of carrying a pistol or revolver without a permit, in violation of § 29-35, if the state establishes that, at the time in question, the defendant had been carrying a pistol or revolver upon his or her person, without the proper permit, and that the defendant was not within his or her dwelling house or place of business. For a defendant to be found guilty of criminal possession of a firearm by a convicted felon,

---

[10] "Claims of legal inconsistency also arise when verdicts are based on a legal impossibility." *State* v. *DeCaro*, 252 Conn. 229, 244 n.13, 745 A.2d 800 (2000). An example of this would be the conviction of one defendant and the acquittal of the other, by the same jury, in a joint trial of two alleged coconspirators. See *State* v. *Green*, 261 Conn. 653, 670, 804 A.2d 810 (2002).

in violation of § 53a-217, the state must prove that the defendant had possessed a firearm, and that he or she had been convicted of a felony. The Penal Code defines the word "possess," as it applies to § 53a-217, as "to have physical possession or otherwise to exercise dominion or control over tangible property . . . ." General Statutes § 53a-3 (2). Moreover, the statute governing the division of the state police defines the terms "pistol" and "revolver" as "any firearm having a barrel less than twelve inches in length." General Statutes § 29-27. The Penal Code provides the same definition for pistol and revolver; see General Statutes § 53a-3 (18); and defines "firearm" as "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ." General Statutes § 53a-3 (19). It is possible, therefore, for a convicted felon to have possessed a firearm, in violation of § 53a-217, yet not violate § 29-35, either because the weapon in question was not a pistol or revolver, the defendant had not been carrying the firearm at the time in question, or the defendant had been within the confines of his or her dwelling or place of business. Likewise, it is possible for a defendant to have violated § 29-35 by carrying a pistol without a permit, outside of his or her dwelling or place of business, yet not violate § 53a-217 because the defendant was not a convicted felon. "Thus, each offense contains different elements and, consequently, a conviction of one . . . is not inconsistent on its face with an acquittal on the other." (Internal quotation marks omitted.) *State* v. *DeCaro*, supra, 252 Conn. 245. Accordingly, we reject the defendant's claim of legal inconsistency.

The defendant next claims that the verdict of the trial court was *logically* inconsistent with the jury verdict. Specifically, the defendant asserts that the verdicts of the trial court and jury necessarily were based upon

the same presentation of the evidence, particularly the testimony of McQuillar. The defendant contends that the trial court must have found that the defendant had been carrying a pistol or revolver, and that this factual finding effectively negated the jury's acquittal of the defendant on the count of carrying a pistol or revolver without a permit. Therefore, the defendant asserts, the verdict of the trial court must be vacated because it logically cannot be squared with the verdict of the jury. In response, the state contends that the defendant cannot prevail in this regard because he has failed to supply this court with a complete transcript of his trial. Specifically, the state claims that, without a complete transcript of the trial, the defendant cannot establish, as a predicate for this claim, that the verdicts of the trial court and the jury indeed were based upon the same evidence. The state claims, for example, that the jury may have acquitted the defendant because it found that the defendant had carried a firearm that was neither a pistol nor a revolver, or because it had disregarded the stipulation that the defendant did not have a permit to carry a pistol or revolver. Therefore, the state contends, the verdict of the trial court was reasonably and logically reached. We conclude that, even were we to assume that the defendant's assertions are correct, and that the verdicts of the trial court and the jury were based upon the same evidence and the same issue of whether the defendant had been carrying a pistol or revolver, the defendant's claim nonetheless fails because any inconsistency between the verdicts was permissible.

It is well recognized that, in criminal trials before a jury, "[t]he general rule to which we subscribe is that factual consistency in the verdict is not necessary. Each count in an indictment is regarded as if it [were] a separate indictment." (Internal quotation marks omitted.) *State* v. *Hinton,* 227 Conn. 301, 313, 630 A.2d 593

(1993). "[A] factually inconsistent verdict will not be overturned on appeal. On several occasions, this court has refused to reverse a verdict of guilty on one count where that verdict appeared to be inconsistent with a verdict of acquittal on another count. . . . The law permits inconsistent verdicts because of the recognition that jury deliberations necessarily involve negotiation and compromise. . . . [I]nconsistency of the verdicts is immaterial. . . . As Justice Holmes long ago observed in the case of *Dunn* v. *United States*, 284 U.S. 390, 393–94, 52 S. Ct. 189, 76 L. Ed. 356 (1932): The most that can be said in such cases . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity. . . . That the verdict may have been the result of compromise, or a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters. . . . *State* v. *Bailey*, 209 Conn. 322, 344–45, 551 A.2d 1206 (1988)." (Internal quotation marks omitted.) *State* v. *DeCaro*, supra, 252 Conn. 242–43.

The defendant does not appear to claim that the verdict of the trial court should be vacated because it was *factually* inconsistent with the jury verdict. Rather, the defendant claims that the trial court's verdict, finding the defendant guilty of criminal possession of a firearm, *logically* cannot be reconciled with the jury's verdict finding the defendant not guilty of carrying a pistol or revolver without a permit. "While an inconsistent verdict is not objectionable in itself, its inconsistency may be considered insofar as it supports a claim that the jury's conclusion was not reasonably and logically reached." *State* v. *Manning*, 162 Conn. 112, 123, 291

A.2d 750 (1971); see *State* v. *DeCaro*, supra, 252 Conn. 243. Specifically, the defendant contends that the verdict of the trial court was unreasonable because it was based upon a determination that the defendant had possessed a firearm, despite the jury's opposite conclusion, based on identical evidence, that the defendant had not.

The defendant's argument relies, in part, on the rule followed in other jurisdictions that inconsistent verdicts are impermissible in criminal proceedings before a trial court as the sole trier of fact. See *United States* v. *Maybury*, 274 F.2d 899, 902 (2d Cir. 1960). In *Maybury*, the United States Court of Appeals for the Second Circuit reasoned that the rationale for permitting inconsistent verdicts from a jury does not exist in criminal cases before a judge. "There is no arbitral element in . . . a trial [to the court]. While the historic position of the jury affords ample ground for tolerating the jury's assumption of the power to insure lenity, the judge is hardly the voice of the country, even when he sits in the jury's place. If he deems an indictment multiplicious, he has only to say so, and the time for him to exercise any lenity that he deems warranted is on sentence. *There is no need to permit inconsistency in the disposition of various counts so that the judge may reach unanimity with himself . . . .*" (Emphasis added; internal quotation marks omitted.) Id., 903.

We previously have not had the opportunity to decide whether to extend the rule allowing inconsistent jury verdicts to cases tried solely to the court, and we need not reach that question today.[11] It is clear that, in *May-*

[11] We note that there is a split of authority concerning the permissibility of inconsistent verdicts rendered by the trial court as the sole trier of fact. Compare *United States* v. *Duz-Mor Diagnostic Lab, Inc.*, 650 F.2d 223, 226–27 (9th Cir. 1981) (inconsistent verdicts impermissible in court trial), *United States* v. *Maybury*, 274 F.2d 899, 903 (2d Cir. 1960) (same), *State* v. *Meyer*, 17 Kan. App. 2d 59, 70, 832 P.2d 357 (1992) (same), *Shell* v. *State*, 307 Md. 46, 54, 512 A.2d 358 (1986) (same), and *Akers* v. *Commonwealth*, 31 Va. App. 521, 530–31, 525 S.E.2d 13 (2000) (same) with *United States*

*bury*, the Second Circuit was concerned solely with the situation wherein a trial court, sitting as the sole trier of fact, has undermined the credibility of its own decision by rendering two or more verdicts that are inconsistent with each other. Indeed, the court explained that the reason for reversing an inconsistent verdict by a trial court "is not because of any desire for elegantia juris but because we can have no confidence in a judgment convicting [the defendant] of one crime when the judge, by his acquittal of another, appears to have rejected the only evidence that would support the conviction here." Id., 905. This logic does not apply to cases wherein, like the present case, there were multiple triers of fact deciding separate counts, and each fact finder was consistent with itself. The only inconsistency in the present case was between the separate decisions of the jury and the trial court.[12]

v. *Chilingirian*, 280 F.3d 704, 711 (6th Cir. 2002) (inconsistent verdicts permissible in court trial), *United States* v. *Wright*, 63 F.3d 1067, 1074 (11th Cir. 1995) (same), *United States* v. *West*, 549 F.2d 545, 553 (8th Cir. 1977) (same), cert. denied, 430 U.S. 956, 97 S. Ct. 1601, 51 L. Ed. 2d 806 (1977), *Haynesworth* v. *United States*, 473 A.2d 366, 371 (D.C. App. 1984) (inconsistent court verdict permissible unless factual inconsistency; trial courts can avoid appearance of inconsistency by explaining findings on record), *People* v. *O'Malley*, 108 Ill. App. 3d 823, 833, 439 N.E.2d 998 (1982) (inconsistent court verdict permissible if supported by rational explanation on record), *People* v. *Pugh*, 36 App. Div. 2d 845, 846, 321 N.Y.S.2d 504 (1971) (same), aff'd, 29 N.Y.2d 909, 279 N.E.2d 604, 29 N.Y.S.2d 860, cert. denied, 406 U.S. 921, 92 S. Ct. 1777, 32 L. Ed. 2d 120 (1972), and *Commonwealth* v. *Harris*, 239 Pa. Super. 603, 606, 360 A.2d 728 (1976) (inconsistent court verdict permissible), aff'd, 488 Pa. 141, 411 A.2d 494 (1979); see also *Harris* v. *Rivera*, 454 U.S. 339, 342–44, 102 S. Ct. 460, 70 L. Ed. 2d 530 (1981) (holding, within limited context of habeas proceeding, that inconsistent court verdict in criminal trial does not give rise to constitutional grounds for collateral attack of conviction); annot., 18 A.L.R.3d 259 (1968).

[12] Moreover, as the defendant conceded at oral argument before this court, had the same verdicts resulted from a criminal trial before the jury as the sole trier in fact, any inconsistency between the verdicts would be permissible. As we conclude herein, the defendant has failed to provide us with any compelling reason to recognize a distinction between inconsistent verdicts from a jury as the sole trier of fact and inconsistent verdicts between the jury and the trial court as concurrent triers of fact.

We are aware of only one case that squarely has addressed the precise question that is before us. In *Galloway* v. *State*, 371 Md. 379, 385, 809 A.2d 653 (2002), a case relied on by the defendant, the Maryland Court of Appeals held that "in criminal cases where the circumstances and fact issues alleged are identical, a guilty verdict, or its equivalent, by the court, that is inconsistent with a jury verdict of acquittal, is, generally, impermissible." The court concluded, on the basis of factual and procedural circumstances that were strikingly similar to the circumstances of the present case, that the trial court's conviction of the defendant on weapons charges effectively had "nullified" the jury's verdict finding the defendant not guilty of a separate but related weapons charge. Id., 400–401.

In support of this decision, the Maryland Court of Appeals relied heavily upon its previous decisions holding inconsistent verdicts impermissible within the context of a criminal case tried solely to the court. Those decisions, in turn, had been based upon the reasoning of the Second Circuit in *Maybury*. Id., 408–409, citing *United States* v. *Maybury*, supra, 274 F.2d 903. As we previously have discussed, however, we do not agree that the rule prohibiting inconsistent verdicts by the trial court, as the *sole* trier of fact, can be extended to preclude inconsistencies as between two separate fact finders. As noted by a dissenting judge in *Galloway*, writing for himself and two other judges: "[T]he critical—and obvious—distinction between [*Maybury*] . . . and the case now before us is the absence of an internal inconsistency in the trial court's verdict. This is not a case that demands reversal because we have no 'confidence' in the trial court's judgment. Indeed, the court articulated the reasons for its verdict. . . . The court found the testimony of the State's chief witness . . . to be credible. . . . Clearly, the trial court is free to credit the testimony of the witnesses." *Gallo-*

*way* v. *State*, supra, 371 Md. 439 (Harrell, J., dissenting). We agree with the distinction drawn by the dissenting opinion in *Galloway* and, accordingly, decline to follow the reasoning of the majority in that case.

In the present case, the trial court clearly stated the reasons underlying its decision to convict the defendant of criminal possession of a firearm. In particular, the court noted that it had credited the testimony of McQuillar, who had testified that he had witnessed the defendant carrying a firearm. "The determination of a witness' credibility is the special function of the trial court. This court cannot sift and weigh evidence." (Internal quotation marks omitted.) *State* v. *Nowell*, 262 Conn. 686, 695, 817 A.2d 76 (2003). Accordingly, we conclude that the trial court's verdict was both reasonable and logical, and free of any internal inconsistency. Because the only inconsistency in this case was between the factual determinations of *separate* fact finders as to different, albeit similar, charges, we cannot say that the inconsistency rendered the outcome illogical or unreasonable.[13]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[13] Because we conclude that the verdict of the trial court was neither collaterally estopped by nor impermissibly inconsistent with the jury's verdict, we reject the defendant's claim that the court's verdict was contrary to the sound administration of justice.