# STATE OF CONNECTICUT *v.* KIMBERLY MAHONEY BORRELLI
## (AC 25414)

Flynn, Bishop and McLachlan, Js.*

---

\* The listing of judges reflects their status on this court as of the date of oral argument.

Argued January 10—officially released April 18, 2006

*Philip Russell*, with whom was *Christopher W. Caldwell*, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Tiffany M. Lockshier*, deputy assistant state's attorney, for the appellee (state).

Opinion

McLACHLAN, J. The defendant, Kimberly Mahoney Borrelli, appeals from the judgment of conviction, rendered after a court trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a).[1] On

---

[1] General Statutes § 14-227a (a) provides: "Operation while under the influence or while having an elevated blood alcohol content. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area

appeal, the defendant claims that the court improperly (1) found that there was sufficient evidence to convict her, (2) rejected her defense of involuntary intoxication and (3) rendered an inconsistent decision. We disagree and affirm the judgment of the trial court.

The evidence before the court was as follows. On September 23, 2002, the defendant drove her vehicle to Saxe Middle School in New Canaan in the late afternoon to pick up her daughter after soccer practice. The defendant's husband, who was also at the practice, and the defendant spent about fifteen minutes talking to each other and then left the practice for their home in separate vehicles. The defendant drove a blue Range Rover. She had her nine year old daughter in the passenger seat. The defendant had driven the route from the soccer field to her home many times. Her husband followed her in his vehicle for approximately one mile and then turned off in another direction at around 5 p.m. to get some food for dinner. The defendant's husband did not observe anything unusual about the defendant's driving during the four or five minutes that he followed her.

At approximately 5:15 p.m., Elizabeth Hudson was driving her car on Weed Street in New Canaan when she noticed a blue Range Rover being driven erratically. Hudson observed other vehicles going around the Range Rover, but she stayed behind it. She noticed the Range Rover stopping in the road and then rolling forward. She also noticed that at times it was in the left lane, which was the lane for oncoming traffic. The Range Rover turned left onto Wahackame Road, where it continued to travel in the lane for oncoming traffic. It also struck some bushes on the right side of the road.

for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, "elevated blood alcohol content" means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight."

Hudson called 911 on her cellular telephone and reported to the New Canaan police department her observations regarding the Range Rover. She continued to follow the Range Rover at the request of the police. She observed the Range Rover roll through the stop sign at the intersection of Wahackame Road and Ponus Ridge Road. The vehicle then turned right onto Ponus Ridge Road, where it was drifting back and forth and stopping and starting. From Ponus Ridge Road, the Range Rover turned right onto a narrow street, Clearwater Lane, where it came to a stop in the process of trying to turn around.

Hudson stopped her vehicle, walked to the Range Rover and asked the operator, the defendant,[2] to turn off the ignition, which she did. Hudson asked the defendant what was the matter. The defendant mentioned an allergy pill that was reacting badly with her system. Hudson noticed that the defendant was incoherent. The defendant's daughter said that they were lost and couldn't find their way home.[3] The New Canaan police arrived at the scene, and Hudson left.

Officer Roy Adams and Sergeant Fred Pickering of the New Canaan police department arrived at the intersection of Ponus Ridge Road and Clearwater Lane. They observed the Range Rover at a stop partially in Clearwater Lane and partially on grass. The officers noticed a woman, a young girl and two dogs in the vehicle. The woman was identified as the defendant. Adams asked the defendant if she had been drinking alcohol or taking drugs. She responded that she had not been drinking. She said that she was taking various prescription medications and nonprescription medications. She stated that an allergy medication had caused her to be drowsy.

---

[2] In court, Hudson identified the defendant as the operator of the Range Rover on September 23, 2002.

[3] The street where the defendant stopped her vehicle was one to two miles from her home.

She mentioned Tavist-D, Benadryl, Klonopin, Xanax, trazodone hydrochloride (trazodone) and nortriptyline hydrochloride (nortriptyline). She said that she was taking these medications for a colon disorder[4] and to treat depression. The defendant could not tell the officers where she lived or why she was on Ponus Ridge Road. There was no odor of alcohol on her breath. The officers noted that she looked fatigued and had slurred speech. They described her as sluggish, tired, calm, quiet and with slow actions. They noted that she stumbled when she was trying to get out of her vehicle. Adams then administered field sobriety tests. The defendant failed the walk and turn test. She started the test before instructed to do so. She raised her arms, stepped off a straight imaginary line and stumbled a couple of times. She also failed to walk heel to toe as instructed, took an incorrect number of steps, turned incorrectly and had to stop to steady herself. Adams began to administer the one leg stand test, but because the defendant swayed while balancing, Adams was afraid she might injure herself and stopped the test. On the basis of the test results and the officers' observations, the defendant was arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor or drugs and transported to the New Canaan police department.

At the police department, the defendant again denied drinking any alcohol and repeated the various medications she was taking. After consulting with an attorney by telephone, the defendant consented to giving urine samples for toxicological testing. The defendant requested that she also be given a blood test, but the police refused her request and elected to test by urine samples. She produced a urine sample, which was dis-

---

[4] The defendant suffered from Crohn's disease, which is an extreme inflammation of the large intestine. It results in the patient having flare-ups that include diarrhea, extreme pain and dehydration.

posed of because it was deemed by the police to be an insufficient quantity. Pickering testified that the sample was more than a tablespoon and less than half a cup. The state's expert toxicologist, Richard Pinder, testified that a sample of one half of one tablespoon would have been sufficient for testing at the state laboratory. After the first urine sample was disposed of, the defendant tried to produce a second one, but was unable to do so. The defendant again requested a blood test, but the police declined to administer one.

At the time of this incident, the defendant suffered from certain unspecified allergies and Crohn's disease. Dehydration due to Crohn's disease can also cause slurred speech, dizziness and disorientation. The defendant had a history of severe flare-ups of her Crohn's disease for which she had been hospitalized on at least one occasion prior to September 23, 2002.

Starting in November, 2001, the defendant was also being treated by Ellen Shander, a psychiatrist, for severe depression. Her prescribed antidepressant medications were nortriptyline, Klonopin, trazodone and Xanax.[5] These prescription medications are all compatible with each other, and the combination of medications never affected the defendant's ability to operate a motor vehicle prior to September 23, 2002. There is no evidence that the defendant took her medications other than in prescribed dosages at the prescribed times.

In addition to her prescribed antidepressant and antianxiety medications, the defendant took two over-the-counter medications on September 23, 2002. She took Benadryl sometime during the previous night and a single Tavist-D during the afternoon of September 23. The court determined that the defendant took the

---

[5] Nortriptyline and trazodone are antidepressants. Klonopin and Xanax are antianxiety medications that decrease panic attacks.

Tavist-D pill at approximately 3 p.m.[6] The court also noted that Benadryl and Tavist-D are antihistamine medications taken for allergies. Both are central nervous system depressants, which can cause physical lethargy, mental lethargy, confusion and slow thinking if taken alone or when added to other central nervous system depressants, depending on the quantity taken. Shander testified that Benadryl and Tavist-D are not indicated for persons with Crohn's disease because they can also cause dehydration in addition to the dehydration associated with Crohn's disease. She also testified that a person with Crohn's disease who took Tavist-D would have symptoms of slurred speech, ataxia, which is imbalance, and disorientation. Shander never advised the defendant not to take Tavist-D or Benadryl, or warned her of their potential side effects.

The defendant was charged with one count of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a, one count of reckless driving in violation of General Statutes § 14-222 (a)[7] and one count of risk of injury to

---

[6] The defendant testified that she told the police that she took Tavist-D at approximately 1 p.m., but on the videotape of her interview at the police station, which was admitted into evidence as state's exhibit two, she said that she was napping at 1 p.m. and took the Tavist-D pill at approximately 3 p.m. The officers entered 3 p.m. on their report as the last time she had taken any medications.

[7] General Statutes § 14-222 (a) provides: "No person shall operate any motor vehicle upon any public highway of the state, or any road of any specially chartered municipal association or of any district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or in any parking area for ten cars or more or upon any private road on which a speed limit has been established in accordance with the provisions of section 14-218a or upon any school property recklessly, having regard to the width, traffic and use of such highway, road, school property or parking area, the intersection of streets and the weather conditions. The operation of a motor vehicle upon any such highway, road or parking area for ten cars or more at such a rate of speed as to endanger the life of any person other than the operator of such motor vehicle, or the operation, downgrade, upon any highway, of any motor vehicle with a commercial registration with the clutch or gears disengaged,

a child in violation of General Statutes (Rev. to 2001) § 53-21.[8] The court acquitted the defendant of the latter two charges and found her guilty of operating a motor vehicle while under the influence of intoxicating liquor or drugs.[9] The court found that the defendant lacked to an appreciable degree that ability to function properly in the operation of her motor vehicle. The court also found that the impairment was the result of the defendant having taken the Tavist-D pill at approximately 3 p.m. on September 23, 2002. Although the court recognized the defendant's assertion of the defense of involuntary intoxication, it reasoned that because § 14-227a (a) (1) is a general intent crime and the defendant was able to form the intent to continue driving her vehicle while impaired, she was guilty of operating a motor vehicle while under the influence of drugs.

I

The defendant's first claim on appeal is that there was insufficient evidence to convict her of violating § 14-227a (a) (1). "The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the [decision]. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom

_____

or the operation knowingly of a motor vehicle with defective mechanism, shall constitute a violation of the provisions of this section. The operation of a motor vehicle upon any such highway, road or parking area for ten cars or more at a rate of speed greater than eighty-five miles per hour shall constitute a violation of the provisions of this section."

[8] General Statutes (Rev. to 2001) § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

[9] Notwithstanding the apparent involuntary nature of the defendant's intoxication, the state pursued all three charges.

the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the [fact finder] if there is sufficient evidence to support the [decision]." (Internal quotation marks omitted.) *State* v. *Elsey*, 81 Conn. App. 738, 743–44, 841 A.2d 714, cert. denied, 269 Conn. 901, 852 A.2d 733 (2004). "The rule is that the [trier's] function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Pulaski*, 71 Conn. App. 497, 502, 802 A.2d 233 (2002).

Here, the court found sufficient evidence to show that the defendant was impaired and that her impairment was caused by a drug or drugs. Specifically, the court found that the defendant's vehicle was seen by Hudson weaving across the road and being driven erratically. Both Adams and Pickering noted the defendant's slurred speech, glassy eyes, confusion and disorientation. The defendant stumbled when getting out of her vehicle and failed two different field sobriety tests. Moreover, the defendant admitted at the time of the incident that she was having a bad reaction to an allergy pill. The court found that she had ingested Tavist-D approximately two hours before her arrest.

Furthermore, although Pinder could not offer an opinion about whether the defendant was under the influence of any drug on September 23, 2002, Shander did testify that a person with Crohn's disease who took Tavist-D would have symptoms of slurred speech, ataxia and disorientation. The evidence submitted to the court was consistent with the court's finding that the defendant was operating a motor vehicle while under the influence of a drug. Accordingly, the court had sufficient evidence to convict the defendant of

operating a motor vehicle while under the influence of intoxicating liquor or drugs.

## II

The defendant's second claim on appeal is that the court improperly rejected her defense of involuntary intoxication. She claims that her intoxication was involuntary and, therefore, that it rendered her unable to appreciate the wrongfulness of her conduct or to conform her conduct to the law because she did not know that Tavist-D could affect her mental processes as it did. She further claims that to convict her under § 14-227a (a) (1), the state should have been required to show that she knew or should have known that the substance she ingested could cause her to lack to an appreciable degree the ability to operate her vehicle properly. We disagree. Although the defendant's intoxication was involuntary, we conclude that she still possessed the mental state necessary to convict her of operating a motor vehicle while under the influence of intoxicating liquor or drugs. The interpretations of the requirements to convict for a violation of § 14-227a (a), as well as whether involuntary intoxication is a defense to such a charge, are questions of law and, therefore, the court's review is de novo. See *Andover Ltd. Partnership I* v. *Board of Tax Review*, 232 Conn. 392, 396, 655 A.2d 759 (1995).

## A

The availability of intoxication as a defense to a criminal charge is governed by General Statutes § 53a-7.[10]

---

[10] General Statutes § 53a-7 provides: "Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged, provided when recklessness or criminal negligence is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, 'intoxication' means a substantial distur-

This statute does not distinguish between voluntary and involuntary intoxication; however, our Supreme Court has held that voluntary intoxication is relevant only to show an absence of specific intent and has no relevance to the presence or absence of general intent. See *State v. Bitting*, 162 Conn. 1, 7, 291 A.2d 240 (1971). The crime of operating a motor vehicle while under the influence of intoxicating liquor or drugs requires only that the defendant have the general intent to do any act or make use of any mechanical or electrical agency that alone or in sequences will set in motion the motive power of the vehicle. See *State v. Ducatt*, 22 Conn. App. 88, 92–93, 575 A.2d 708, cert. denied, 217 Conn. 804, 584 A.2d 472 (1990). Although courts in other states have held that involuntary intoxication is a permissible defense for crimes of general intent, we find no authority from any court in this state that allows it. Here, the court considered the applicability of the defense of involuntary intoxication to this charge, but it found, despite her involuntary intoxication, that the defendant did have the general intent to commit the act proscribed by § 14-227a (a) (1). Although she was impaired, she formed the general intent to continue driving for some distance and to look for a place to make a U-turn. The court properly concluded that the defendant's involuntary intoxication was not sufficient to negate the general intent required for a conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs.

B

The defendant argues that pursuant to § 14-227a, the state was required to prove that she knew or should have known that she had ingested an intoxicant. We disagree. The statute fails to state that operating a motor

bance of mental or physical capacities resulting from the introduction of substances into the body."

vehicle while under the influence of intoxicating liquor or drugs requires proof of knowledge that the substance ingested can cause intoxication. "Where the language of the statute is clear and unambiguous, we have refused to speculate as to the legislative intention, because it is assumed that the words express the intention of the legislature. . . . Moreover, courts should not imply exceptions to a statute which the legislature did not prescribe by words or implication." (Citations omitted; internal quotation marks omitted.) *State* v. *Snook*, 210 Conn. 244, 267, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989). We are not faced with an ambiguity in the statute as applied to the facts of this case. We perceive nothing in the language of the statute that provides that operating a motor vehicle while under the influence of intoxicating liquor or drugs requires proof of knowledge that the substance ingested was an intoxicant and, therefore, we will not imply an exception that would require proof of knowledge.

Furthermore, the courts of this state repeatedly have held that the only intent required for a conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs is the intent to operate a motor vehicle. See *State* v. *Swift*, 125 Conn. 399, 402–403, 6 A.2d 359 (1939); see, e.g., *State* v. *Wiggs*, 60 Conn. App. 551, 554–55; 760 A.2d 148 (2000); *State* v. *Gracia*, 51 Conn. App. 4, 12, 719 A.2d 1196 (1998); *State* v. *Ducatt*, supra, 22 Conn. App. 92–93. Accordingly, the state was required to prove only that the defendant intended to operate her vehicle, not that the defendant knew or should have known that she had ingested an intoxicant.

### III

The defendant's third and final claim is that the court's decision to find her guilty of operating a motor

vehicle while under the influence of intoxicating liquor or drugs was inconsistent with its decision to acquit her of reckless driving and risk of injury to a child. Specifically, she argues that those decisions were inconsistent because the legal and factual conclusion that she was involuntarily intoxicated, which was necessary for the acquittal, was factually and logically inconsistent with the finding of general intent that was necessary to support the conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs. "[W]here the inconsistent verdicts claim involves a simultaneous conviction and acquittal on different offenses, the court, in testing the verdict of guilty for inconsistency as a matter of law, is necessarily limited to an examination of the offense charged in the information and the verdict rendered thereon without regard to what evidence the [trier of fact] had for consideration. . . . If the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other[s]." (Citations omitted; internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 244, 745 A.2d 800 (2000).

Here, each offense contains at least one element that the others do not. For example, a defendant may be found guilty of operating a motor vehicle while under the influence of intoxicating liquor or drugs under § 14-227a (a) (1) only if the state establishes that she operated a motor vehicle on a public highway, or on one of the statute's other designated areas, while under the influence of intoxicating liquor or drugs. Conversely, intoxication is not an element of reckless driving in violation of § 14-222 (a). A conviction for reckless driving requires the state to prove that the defendant operated a motor vehicle in a manner that was reckless with regard to the width, traffic and use of the highway. Risk of injury to a child, as charged under § 53-21 (a) (1), contains elements that are entirely different from those

of operating a motor vehicle while under the influence of intoxicating liquor or drugs and reckless driving. Risk of injury to a child requires that the defendant's conduct be wilful or unlawful, that the defendant created, acquiesced in or was deliberately indifferent to a situation that was likely to impair the victim's health or morals, and that the victim be younger than sixteen years old. Each offense contains different elements; consequently, a conviction on one is not inconsistent with an acquittal on the others. See id., 245.

Furthermore, the court's decisions were reasonably and logically reached. The court rejected the defendant's defense of involuntary intoxication with respect to the charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs because the evidence showed that she, nonetheless, possessed the general intent to operate a motor vehicle. The court found the defendant not guilty of reckless driving, however, because her involuntary intoxication made her incapable of perceiving the risks associated with her erratic driving. Similarly, the court found the defendant not guilty of risk of injury to a child because the confusion and disorientation caused by her reaction to the Tavist-D precluded her ability to have the specific wilful intent, which is an element of this crime. Each of the three crimes at issue required a different mens rea. Accordingly, we conclude that the court's decisions were not inconsistent.

The judgment is affirmed.

In this opinion the other judges concurred.