## STATE OF CONNECTICUT *v.* PETER GRANT
### (AC 26871)

DiPentima, Gruendel and Berdon, Js.

---

Argued May 29—officially released August 28, 2007

*William B. Westcott*, special public defender, for the appellant (defendant).

*Kathryn Ward Bare*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Anne F. Mahoney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Peter Grant, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1).[1] On appeal, the defendant claims that the jury's verdict of guilty on the charge of manslaughter in the second degree was legally and logically inconsistent with its verdict of not guilty

---

[1] General Statutes § 53a-56 (a) provides in relevant part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

on the charge of carrying a dangerous weapon in violation of General Statutes § 53-206.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the middle of the day on Sunday, July 21, 2002, the defendant was walking on Albany Avenue in Hartford when he saw the victim, Garfield Walker, outside of Carlton's Jamaican Restaurant. The defendant and the victim, both citizens of Jamaica, had known each other for several years and had come to Connecticut at the same time in 1999. During the week preceding the incident, the defendant and the victim had worked on a farm in Avon, where they earned an hourly wage. With the defendant's consent, the victim had collected the money owed to them; they had arranged for the victim to borrow $80 of the defendant's $110 to pay his rent, which would be paid back to the defendant in $40 installments. When the defendant saw the victim outside the restaurant, he asked him for the remaining $30, but the victim told him that he did not have it and was waiting to meet someone, after which time he would possess the money. The defendant told the victim that he would try to return in order to collect the money and entered the car of a friend to drive to Hartford High School for a church event.

Approximately forty-five minutes to one hour later, the defendant returned, called for the victim and entered the restaurant, despite its being closed on Sunday. The victim, who had been in the kitchen talking with the proprietor, emerged.[3] The defendant testified

[2] General Statutes § 53-206 delineates the punishment for, inter alia, "[a]ny person who carries upon his or her person . . . any knife the edged portion of the blade of which is four inches or over in length . . . ." General Statutes § 53-206 (a).

[3] Noel Thompson, the proprietor of Carlton's Jamaican Restaurant, testified that the victim had come to the restaurant the day before the incident seeking employment. Because he was very busy at that time, Thompson told him to come back the next day, a Sunday, when he would be cleaning the restaurant and would have more time to talk. When the victim returned,

that the victim was brandishing a knife, which he was forced to wrest from the victim's right hand. Because the defendant was blocked from behind when he retrieved the knife, and because the victim was immediately approaching, the defendant stabbed him. The defendant then backed out of the restaurant with the knife in his possession, in order to prevent the victim's pursuit, and walked west on Albany Avenue. Because his right hand was cut and bleeding, the defendant went to a friend's house to clean his wound after dropping the knife in some bushes. Although he did not tell the friend about the incident, he did inform two others whom he encountered on his way home at about 3 o'clock that afternoon. The victim ultimately died as a result of the stabbing.

The police visited the defendant at approximately midnight that night at his apartment. He willingly cooperated with them and drew a map of the location, indicating where they would be able to find the knife in the bushes. The defendant was arrested and charged with murder and carrying a dangerous weapon. Evidence was presented to the jury on March 28, 29 and 30 and April 4, 2005. The jury returned a verdict of guilty on the charge of manslaughter in the second degree and not guilty on the charge of carrying a dangerous weapon. On April 18, 2005, the defendant filed a motion for a judgment of acquittal, which the court denied on July 1, 2005. On July 8, 2005, the defendant was sentenced to eight years imprisonment, execution suspended after four years, and five years probation. This appeal followed.

We begin our analysis of the defendant's claim by setting forth the applicable standard of review. "The resolution of a claim of inconsistent verdicts presents a

Thompson took him to the kitchen to talk and see if he was able to cut chicken properly.

question of law. . . . Our review is therefore plenary." (Citation omitted.) *State* v. *Flowers*, 85 Conn. App. 681, 694, 858 A.2d 827 (2004), rev'd on other grounds, 278 Conn. 533, 898 A.2d 789 (2006). The defendant's sole claim on appeal is that his conviction of manslaughter in the second degree was both legally and logically inconsistent with his acquittal on the charge of carrying a dangerous weapon. We disagree.

Regarding the defendant's claim that the verdict was *legally* inconsistent, our Supreme Court observed in *State* v. *DeCaro*, 252 Conn. 229, 745 A.2d 800 (2000), that "[w]here the inconsistent verdicts claim involves a simultaneous conviction and acquittal on different offenses, the court, in testing the verdict of guilty for inconsistency as a matter of law, is necessarily limited to an examination of the offense charged in the information and the verdict rendered thereon without regard to what evidence the jury had for consideration. . . . If the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other." (Citations omitted; internal quotation marks omitted.) Id., 244.[4]

The court accurately charged the jury on the elements of both crimes. During its charge on manslaughter in the second degree in violation of General Statutes § 53a-56, the court stated: "A person is guilty of manslaughter in the second degree when he recklessly causes the death of another person. To convict the defendant of

---

[4] The state cites *United States* v. *Powell*, 469 U.S. 57, 66–69, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984), to support its claim that "because a claim of legal inconsistency can only encompass purportedly conflicting convictions, and not a purportedly inconsistent conviction and acquittal," the defendant's claim is unreviewable. The state recognizes, however, that there exists ample Connecticut case law that allows the reviewability of such claims. See, e.g., *State* v. *Knight*, 266 Conn. 658, 667–68, 835 A.2d 47 (2003); *State* v. *DeCaro*, supra, 252 Conn. 244–45; *State* v. *Borrelli*, 94 Conn. App. 849, 861–62, 895 A.2d 257 (2006).

manslaughter in the second degree under this subsection, as a lesser included offense of murder under count two of the information, the state must prove two essential elements beyond a reasonable doubt. Number one [is] that at the time and place alleged in the information, the defendant caused the death of [the victim], and number two [is] that when the defendant engaged in the conduct that caused the death of [the victim], he did so recklessly."[5] As part of its charge on carrying a dangerous weapon, the court instructed: "Under General Statutes § 53-206 is provided that any person commits a crime who carries upon his person any knife, the edged portion of the blade of which is four inches or over in length. Under the language of this statute, the offense of carrying a dangerous weapon has two . . . essential elements, which the state must prove beyond a reasonable doubt to obtain a conviction. One [is] that at the time and place alleged in the count in question, the defendant carried a knife upon his person, and number two [is] that the edged portion of the blade of the knife he then carried was greater than four inches in length."

The court further thoroughly defined each of the elements for both crimes. It is beyond dispute that the offenses charged contain purely distinct elements, and therefore "a conviction of one offense is not inconsistent on its face with an acquittal of the other." *State* v. *DeCaro*, supra, 252 Conn. 244. The defendant's claim that his conviction of manslaughter in the second degree is legally inconsistent with the judgment of

---

[5] We note that "[t]he requisite state of mind distinguishes murder from manslaughter in the first or second degree. The offense of murder requires that the defendant intentionally cause the death of another . . . while the offense of manslaughter in the first or second degree requires the lesser state of mind of recklessness." (Citation omitted.) *State* v. *Sotomayor*, 61 Conn. App. 364, 380, 765 A.2d 1 (2001), appeal dismissed, 260 Conn. 179, 794 A.2d 996, cert. denied, 537 U.S. 922, 123 S. Ct. 313, 154 L. Ed. 2d 212 (2002).

acquittal of carrying a dangerous weapon therefore fails.[6]

The defendant additionally claims that the conviction of manslaughter in the second degree and judgment of acquittal on the charge of carrying a dangerous weapon are *logically* inconsistent. The crux of the defendant's claim involves the court's jury instructions regarding the two crimes. In reference to the charge of manslaughter in the second degree, the court stated that "to establish the first essential element of manslaughter in the second degree, the state must prove beyond a reasonable doubt that by stabbing [the victim] with a knife, if you find that he did so, the defendant contributed directly and materially to [the victim's] death." The defendant also emphasizes a particular part of the court's definition of carrying a dangerous weapon: "[A] person carries a knife when he physically holds it with any part of his body or in his clothing or any package or object or other thing that he then physically possesses. A person carries a knife, by this definition, either when he is standing still or when he is in motion."

---

[6] The defendant appears to argue that because the state's information charged him with murder rather than manslaughter in the second degree; see footnote 5; this court cannot compare the elements of the latter with those of carrying a dangerous weapon for purposes of determining whether the conviction was legally inconsistent with the acquittal. We note, however, that manslaughter is a lesser included offense of murder; see, e.g., *State* v. *Cuffee*, 32 Conn. App. 759, 761, 630 A.2d 621 (1993) (defendant found not guilty of charge of murder and guilty of lesser included offense of manslaughter in second degree); *State* v. *Riggs*, 7 Conn. App. 180, 187, 508 A.2d 67 (jury impliedly found defendant not guilty of murder and found him guilty of lesser included offense of manslaughter in second degree), cert. denied, 200 Conn. 804, 510 A.2d 191, cert. denied, 479 U.S. 852, 107 S. Ct. 183, 93 L. Ed. 2d 118 (1986); and the defendant, having been charged with murder, was on notice that he could be convicted of any of the lesser included offenses. See *State* v. *Ward*, 76 Conn. App. 779, 795, 821 A.2d 822 ("defendant is presumed to have notice of lesser included offenses"), cert. denied, 264 Conn. 918, 826 A.2d 1160 (2003). Accordingly, the defendant's apparent claim is without merit.

The defendant claims that it would be illogical to convict him of manslaughter in the second degree, due to a stabbing of the victim, yet acquit him of carrying the knife with which the stabbing was presumably committed. To bolster his argument, the defendant quotes from the court's charge on self-defense: "In essence, what I am saying is that if you have already rejected the defendant's claim of self-defense as to the charge of murder or manslaughter on any of the alternative bases I have described for you, you must similarly reject any claim of self-defense or justification as to the time when the defendant admittedly held and used the knife, assertedly to defend himself, while he was inside the restaurant." The defendant appears to argue that the consequence of his conviction of manslaughter in the second degree should have been a conviction of carrying a dangerous weapon, and therefore, the jury's verdict was logically inconsistent.

Despite the apparent inconsistency, however, it is axiomatic that "[a] factually inconsistent verdict will not be overturned on appeal. On several occasions, [our Supreme Court] has refused to reverse a verdict of guilty on one count where that verdict appeared to be inconsistent with a verdict of acquittal on another count. . . . The law permits inconsistent verdicts because of the recognition that jury deliberations necessarily involve negotiation and compromise. . . . [I]nconsistency of the verdicts is immaterial. . . . As Justice Holmes long ago observed in the case of *Dunn* v. *United States*, 284 U.S. 390, 393–94, 52 S. Ct. 189, 76 L. Ed. 356 (1932): The most that can be said in such cases . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they

were disposed through lenity. . . . That the verdict may have been the result of compromise, or a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters. . . . *State* v. *Bailey*, 209 Conn. 322, 344–45, 551 A.2d 1206 (1988)." (Internal quotation marks omitted.) *State* v. *Knight*, 266 Conn. 658, 670, 835 A.2d 47 (2003), quoting *State* v. *DeCaro*, supra, 252 Conn. 242–43.

Accordingly, we decline the invitation to "probe into the logic or reasoning of the jury's deliberations or open the door to interminable speculation"; (internal quotation marks omitted) *State* v. *Hinton*, 227 Conn. 301, 313, 630 A.2d 593 (1993); and the defendant's claim thus fails.

The judgment is affirmed.

In this opinion the other judges concurred.