James R. COPENING, Appellant,

v.

UNITED STATES, Appellee.

No. 7613.

District of Columbia Court of Appeals.

Submitted Sept. 18, 1974.

Decided March 12, 1976.

Alan J. Nuta, Silver Spring, Md., appointed by the court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., and John A. Terry, James F. McMullin, Robert E. Hauberg, Jr., and Joel DuBoff, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before FICKLING, NEBEKER, and HARRIS, Associate Judges.

HARRIS, Associate Judge.

■ Appellant was charged in a single information with three offenses: (1) carrying a pistol without a license, D.C.Code 1973, § 22–3204; (2) possession of an unregistered firearm, D.C.Pol.Reg. Art. 51, § 1; and (3) possession of ammunition for an unregistered firearm, D.C.Pol.Reg. Art. 53, § 2.[1] The charges were tried together. He was acquitted of the statutory charge by the jury, and then was found guilty on each of the Police Regulations counts by the trial judge.[2] Appellant contends principally that the convictions by the judge, expressed immediately following the jury's verdict of acquittal, are barred by the doctrine of collateral estoppel, as applied through the double jeopardy provision of the Fifth Amendment.[3] We affirm.

I

One afternoon a police officer found appellant, unconscious, in the driver's seat of an automobile parked atop a pedestrian island. Appellant was extremely intoxicated and unable to respond to the officer's questions. Appellant and the car were transported to a police station.

At the station, appellant still could make no response to inquiries as to relatives (who might come to get him) or the ownership of the car. Finally, an officer went out to the car to look for the registration card. He opened the unlocked console between the two front seats, and found a loaded .38 caliber pistol. He seized the gun, and then found the registration card mingled with other papers in the console.[4]

Appellant was asked about the seized items but "was still very much under the influence." It was not until approximately 1½ hours after the questioning began that appellant was able to respond coherently. He provided the officers with his wife's name and his place of employment. His wife was called, and she arrived shortly thereafter. Appellant again was asked about the pistol. He was informed that he was being charged with unlawful possession of the weapon, and elected to remain silent about its presence in his car.

1. D.C.Code 1973, § 22–3204, provides in pertinent part:

No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor . . . . .

D.C.Pol.Reg. Art. 51, § provides:

Except as herein provided, no person shall within the District, possess, or keep under his control . . . any pistol, or rifle or shotgun unless such person is the holder of a valid registration certificate for such pistol, rifle, or shotgun.

D.C.Pol.Reg. Art. 53, § 2 states:

No person shall within the District of Columbia purchase or possess ammunition for a firearm unless he is the holder of a valid certificate of registration issued under the regulations, and unless the ammunition is of the same gauge or caliber as the firearm described in the certificate of registration issued to such person.

2. We raised, sua sponte, the question whether appellant's convictions must be reversed due to a lack of the District of Columbia's consent for the United States Attorney to prosecute on the Police Regulations charges. See D.C.Code 1973, § 23–101(d). We were advised that there is a 1972 letter from the Corporation Counsel standing permission for the United States Attorney to prosecute violations of the Police Regulations here in issue if such charges accompany a charge of violating § 22–3204. We find the letter to constitute sufficient compliance with § 23–101(d) in these circumstances, and decline to require the Corporation Council to give formal consent on the record in each case.

3. "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb; * * *" U.S.Const. amend. V. *See generally Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

4. Appellant does not contend that the officer's efforts to ascertain the ownership of the car violated his rights under the Fourth Amendment.

■ The maximum penalty for carrying a pistol without a license is a fine of $1,000 or imprisonment for not more than one year, or both.[5] D.C.Code 1973, § 22–3215. On that charge, since the potential maximum imprisonment exceeded 90 days, appellant was entitled to a trial by jury. D.C.Code 1973, § 16–705(b)(1); *cf. Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). He chose not to waive that right. Possession of an unregistered gun and possession of ammunition for an unregistered gun each subjects a violator to a fine of not more than $300 or imprisonment for not more than 10 days. D.C.Pol.Reg. Art. 55, § 11. Following the customary procedure, one trial was conducted. The jury was to determine guilt on the charge of carrying a pistol without a license, and the trial judge was to make the adjudications on the alleged violations of the Police Regulations.

The defense consisted of the testimony of appellant and his wife. Appellant stated that he and three friends had vacationed in Atlantic City over the weekend, traveling in appellant's automobile. On the drive back they drank heavily. After they returned to the District, two passengers were dropped off. Appellant and the remaining passenger, one of his co-workers, then drove to their place of employment. Appellant explained his tardiness and his inability to work that day, and, now alone, attempted to drive home. The next thing he could remember was his wife's arrival at the police station.

Appellant testified that he paid little attention to the console during the trip, but that he had not seen anyone put a pistol in it. He denied owning a pistol or knowing of its presence in his car. Appellant's wife, who had not accompanied him, testified that she had never seen appellant with a pistol. She also stated that she happened to inspect the console on the day appellant left, and that there was no gun there at that time.

Appellant's dual defense thus was that the gun was not his and that he had no knowledge of its presence in his car. Subsequent to the court's instructions on the charge of carrying a pistol without a license, the jurors asked three times for reinstruction as to intent. Each time they were informed, in effect, that "intent" requires that the act charged be done "consciously and voluntarily and not inadvertently or accidentally." Soon after the court's final response the jury returned a verdict of not guilty. The court then found appellant guilty of possession of an unregistered firearm and possession of ammunition for an unregistered gun.

II

Appellant's first argument is that given the jury's acquittal on the statutory charge, the trial court was collaterally estopped to find him guilty of the two regulatory offenses. Appellant combines his premise that both the statute and the regulation contemplate the same concept of possession (*i. e.,* that the accused must be shown to have been aware of the weapon's presence), with an assertion that the verdict necessarily reflects the jury's conclusion that the government inadequately established the requisite knowledge. It thus is argued that once the jury announced its verdict, the doctrine of collateral estoppel barred the court's findings of guilt on the Police Regulations charges. We disagree.

■ Appellant bases his argument on the Supreme Court's decision in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed. 2d 469 (1970), in which the principles of collateral estoppel were held to be a necessary corollary to the Fifth Amendment's guarantee against double jeopardy.[6] The

---

5. If a defendant previously has been convicted of a felony, the maximum period of imprisonment is ten years. D.C.Code 1973, § 22–3204.

6. The doctrines of double jeopardy and collateral estoppel are related but analytically distinct. The former prohibits the reprosecu-

*Ashe* Court observed (*id.* at 443, 90 S.Ct. at 1194):

"Collateral estoppel" is an awkard phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

■■ In *Ashe,* the petitioner and several codefendants allegedly had robbed six men who had been engaged in a poker game. Ashe first was tried for the robbery of four of the six victims, and was acquitted. Thereafter, in a separate proceeding, Ashe was tried for the robbery of the other two and was convicted. The Supreme Court reversed. It first determined that the record of the prior proceeding affirmatively demonstrated that "[t]he single rationally conceivable issue in dispute before the [first] jury was whether the petitioner had been one of the robbers." 397 U.S. at 445, 90 S.Ct. at 1195. The Court then concluded that the constitutional interests underlying the double jeopardy guarantee required that the state be estopped to prosecute a second case which necessarily turned on the same crucial issue of identity. *Ashe* thus stands for the proposition that an individual cannot be tried by the same sovereign for an offense the conviction of which would require the readjudication of a factual issue which previously has been determined in his favor. *Cf. Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). As we read *Ashe,* application of the collateral estoppel doctrine requires the concurrence

in different proceedings of the three circumstances of (1) a common factual issue necessary to both adjudications, (2) a prior determination of that issue in litigation between the same parties, and (3) a showing that the determination was in favor of the party seeking to raise the estoppel bar.

■ The doctrine of collateral estoppel generally is applicable only where there has been a conclusive prior resolution of the precise factual question presented in the subsequent proceedings. *See Ashe v. Swenson, supra* 397 U.S at 443, 90 S.Ct. 1189. *See also United States v. International Building Co.,* 345 U.S. 502, 504–05, 73 S.Ct. 807, 97 L.Ed. 1182 (1953); *Commissioner v. Sunnen,* 333 U.S. 591, 599–600, 68 S.Ct. 715, 92 L.Ed. 898 (1948). It falls to the party asserting an estoppel bar to establish both the prerequisite existence of a common factual issue and the fact that such issue was "necessarily determined" in his favor. *See Moore v. United States,* 120 U.S.App.D.C. 173, 175, 344 F.2d 558, 560 (1965); *United States v. Cala,* 521 F. 2d 605, 608 (2d Cir. 1975). Where the prior judgment relied upon is in the form of a general verdict, the difficulty of establishing the existence of the necessary prerequisites is compounded. *See United States v. Tramunti,* 500 F.2d 1334, 1346 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). The *Ashe* Court instructed that the appropriate inquiry necessarily involves a "realistic" examination of the whole of the circumstances. 397 U.S. at 444, 90 S.Ct. 1184. Pursuant to such guidance, we have required a clear showing of the threshold elements of collateral estoppel:

"Unless the record of the prior proceeding affirmatively demonstrates that

---

tion of the same offense, while the latter is concerned with the relitigation of the same factual issue. The case at bar presents no double jeopardy issue, since the statutory and regulatory provisions establish separate and distinct offenses. *See United States v. Wilder,* 150 U.S.App.D.C. 172, 175–76, 463 F. 2d 1263, 1266–67 (1972). *See also* D.C. Pol.Reg. Art. 55, § 11. Furthermore, there is no doubt that an individual properly may be convicted of both offenses, regardless of whether the charges are resolved in simultane-

ous or successive adjudications. *Compare Patterson v. United States,* D.C.App., 301 A.2d 67 (1973), *with United States v. Wilder, supra. Cf. Bell v. Kansas,* 452 F.2d 783, 793 (10th Cir. 1971), *cert. denied,* 406 U.S. 974, 92 S.Ct. 2421, 32 L.Ed.2d 674 (1972); *State v. Miller,* 50 Or.App. 501, 484 P.2d 1132 (Or. App.1971), *cert. denied,* 405 U.S. 1047, 92 S.Ct. 1321, 31 L.Ed.2d 590 (1972). It is appellant's assertion of a prior acquittal upon a common factual issue which gives rise to the collateral estoppel claim.

an issue involved in the second trial was definitely determined in the former trial, the possibility that it may have been does not prevent the relitigation of that issue." [*United States v. Smith,* D.C. App., 337 A.2d 499, 503 (1975), quoting *United States v. Haines,* 485 F.2d 564, 565 (7th Cir. 1973), *cert. denied,* 417 U. S. 977, 94 S.Ct. 3184, 41 L.Ed.2d 1147 (1974).]

■ Neither the record before us nor the arguments advanced by appellant persuade us that the issue of knowledge or intent under § 22–3204 necessarily is identical to that involved in the prosecution of the regulatory offenses,[7] or that doubt as to intent led the jury to render its verdict in favor of appellant. We therefore are not convinced that the necessary prerequisites for collateral estoppel have been adequately demonstrated. *Cf. United States v. Smith, supra.*

■ We need not, however, resolve that question, for the outcome of this appeal must turn on the peculiar procedural circumstances of the trial. Unlike Ashe appellant was tried in a single proceeding, in which the adjudications as to his guilt were to be rendered by concurrent as opposed to successive triers. The principles enunciated in *Ashe,* however, clearly contemplate a relitigation of factual issues. *See* 397 U.S. at 443–44, 90 S.Ct. 1194. The existence of a prior judgment has

been described as the "linchpin" of that decision,[8] and subsequent case law has stressed the requirement of a previous trial. *See, e. g., United States v. Mallah,* 503 F.2d 971, 980 (2d Cir. 1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed. 2d 671 (1975); *United States v. Callahan,* 445 F.2d 552, 554 (9th Cir. 1971). *See also United States v. Rollerson,* 145 U.S. App.D.C. 338, 342–43, 449 F.2d 1000, 1004–05 (1971). Because of the nature of the trial in this case, we conclude that there was no "prior adjudication" which would mandate application of the collateral estoppel doctrine.[9]

■ It is appellant's position that merely because the jury announced its verdict on the statutory charge before the trial court pronounced judgment on the regulatory offenses, the jury's determinations constituted a "prior judgment" sufficient to compel collateral estoppel relief. We disagree. Both decisions were announced in the same proceeding, one immediately following the other. More importantly, despite the existence of two triers, the trial was in fact a single, unified hearing. The adversaries were required to present their cases but a single time. Both triers were exposed simultaneously to the same evidence and arguments, and they reached their respective conclusions through simultaneous, albeit, separate, deliberations.[10] We therefore do not ac-

---

7. *Compare Waterstaat v. United States,* D.C. App., 252 A.2d 507, 509 (1969) *with* D.C.Pol. Reg. Art. 55, § 5. *But see Hill v. District of Columbia,* D.C.App., 264 A.2d 145, 146 (1970).

8. *Moton v. Swenson,* 488 F.2d 1060, 1062 (8th Cir. 1973), *cert. denied,* 417 U.S. 957, 94 S.Ct. 3086, 41 L.Ed.2d 675 (1974).

9. The doctrines of res judicata and collateral estoppel "are designed to prevent the relitigation of the same issue in a subsequent suit between the same parties or their privies." *Burrell v. United States,* D.C.App., 252 A.2d 897, 900 (1969), citing *Laughlin v. United States,* 120 U.S.App.D.C. 93, 344 F.2d 187 (1965), and *Randolph v. District of Columbia,* D.C.Mun.App., 156 A.2d 686 (1959).

10. The trial judge correctly noted that he would have been able to announce his conclusions as to the regulatory offenses before the jury returned its verdict. While such a sequence may be the preferable procedure, theoretically it would be equally susceptible to appellant's objections (*e. g.,* if the judge announced a judgment of acquittal and the jury returned a verdict of guilty). The answer, of course, is that the traditional concern of the collateral estoppel doctrine is not with the outcome of a decisional race between different triers, but with the need to protect a party from the rigors of twice litigating the same issue. *See Ashe v. Swenson, supra* at 397 U.S. 445–47, 90 S.Ct. 1189. *See also Green v. United States,* 355 U.S. 184, 187–90, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

cept appellant's assertion that the existence of two triers rendered the proceeding, in effect, "two trials". *Cf. Sidman v. United States,* 470 F.2d 1158 (9th Cir. 1972), *cert. denied,* 409 U.S. 1127, 93 S.Ct. 948, 35 L. Ed.2d 260 (1973).

Nor do we agree with appellant's contention that the issue at bar is controlled by our decision in *Liberty Mutual Ins. Co. v. District of Columbia,* D.C.App., 316 A.2d 871 (1974). There, two negligence actions were consolidated for a single trial in which one claim was to be resolved by a jury and the other by the court.[11] The essence of the resultant determinations was that the jury found the defendant in the first case (Moon) negligent, and the plaintiff (Hickerson) not guilty of contributory negligence. The court reserved judgment on its aspect of the case. Several months later, the court announced its conclusion that both Hickerson and Moon had been negligent, but declared that Hickerson's contributory negligence had not been established "as a matter of law." The court denied defendant Moon's motions for a judgment notwithstanding the verdict or remittitur relief from the jury's award to Hickerson.

We affirmed the result, rejecting an argument by Moon and his insurer that it was error to deny contribution from the District of Columbia (Hickerson's employer) after the court had found that he also had been negligent. Our affirmance, however, was based upon a rationale which differed from that utilized by the trial court. We concluded that the jury's verdict and the court's judgment were "funda-

mentally inconsistent," and held that the trial judge's contradiction of facts "previously determined" by the jury was "contrary to the sound administration of justice," and should be regarded as a "legal nullity." 316 A.2d at 873–74.

*Liberty Mutual* is readily distinguishable from the case at bar, both in terms of the preciseness of the identity between the issue there resolved by the jury and that which confronted the trial judge, and for the degree of certainty that that issue had in fact been resolved in favor of the party asserting the estoppel bar. In that case we noted particularly that "in the same breath" the trial court had concluded that the issue of contributory negligence was "properly within the province of the jury," yet proceeded to contradict the jury's conclusions thereupon. *Id.* at 874 (footnote omitted). Moreover, we do not agree with appellant's contention that the procedural facts of *Liberty Mutual* present the same simultaneity as exists in the case at bar. There the trial court did not conclude its adjudicatory responsibilities until quite some time after the jury announced its conclusions. The temporal context of the challenged judgment by the trial court was its subsequent resolution of Moon's postverdict motions for relief from the jury's earlier pronouncement. Our decision in *Liberty Mutual* was based on the premise that the jury's findings had constituted a "prior determination." We conclude here, however, that the facts present no previous adjudication which would require application of the collateral estoppel doctrine.[12]

---

11. The case arose from a collision between a vehicle driven by Hickerson, an employee of the District of Columbia, and an automobile driven by Moon, in an intersection where the traffic lights had malfunctioned. Hickerson brought an action against Moon, who denied negligence and claimed that Hickerson had been guilty of contributory negligence. Liberty Mutual, Moon's insurer, brought a separate action against the District of Columbia for the property damage to Moon's vehicle, and Moon joined the complaint (on the basis of the malfunctioning signals) with a claim

for the deductible and also for contribution for any award Hickerson might obtain against him in the other suit. The actions were consolidated for a single hearing, but the Hickerson-Moon action was tried before a jury while the Liberty Mutual-District of Columbia case was tried to the judge.

12. In *Liberty Mutual* we expressed concern that the apparent inconsistency between the jury's determinations and the later conclusions of the trial court offended the principles of the "sound administration of justice."

Properly viewed, the issue before us is not the applicability of constitutional restrictions upon successive prosecutions, but rather whether the collateral estoppel principles enunciated in *Ashe v. Swenson* (and its progeny) should be extended to govern the procedurally unique situation in which several criminal charges against the same defendant have been allocated between two triers for concurrent adjudication upon virtually identical evidence. We conclude that they should not.

We have found no District of Columbia case or other federal case which squarely addresses the type of procedure now before us. We therefore must take our guidance from the fundamental principles and policies embodied in the prohibition against double jeopardy which provide the constitutional foundation for appellant's collateral estoppel claim. The Fifth Amendment guarantee has been described as a "barrier against possible tyranny by the overzealous prosecutor." *Ashe v. Swenson, supra* 397 U.S. at 456, 90 S.Ct. at 1200 (Brennan, J., concurring). It is manifest that the principal concern is the protection of the individual against repetitious lawsuits, for the Court has declared that "where there is no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended." *United States v. Wilson,* 420 U.S. 332, 344, 95 S. Ct. 1013, 1022, 43 L.Ed.2d 232 (1975) (footnote omitted). We share the following view:

> The Double Jeopardy Clause is a guarantee "that the State with all its resources and power [shall] not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, ex-

pense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . . ." [*Ashe v. Swenson, supra* 397 U.S. at 450, 90 S.Ct. at 1197 (Brennan, J., concurring), quoting *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). *See United States v. Engle,* 458 F.2d 1021, 1025 (6th Cir.), *cert. denied,* 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 111 (1972).]

We are of the opinion that the concurrent adjudication of closely related offenses in a single trial does not offend these basic concerns for fairness and economy. Furthermore, the suggested extension of the collateral estoppel doctrine to cases such as this, in which an individual is charged with several offenses, some of which entitle the accused to a jury trial and others of which do not, would present serious practical difficulties. Acceptance of appellant's contentions would necessitate either the segregation of the charges for two separate trials, or a single jury trial upon all of the counts, including those for which jury adjudication ordinarily is not available. While the former course has been upheld,[13] it does not appear to be in harmony with either the spirit of *Ashe v. Swenson* or the philosophy of the rules of criminal procedure.[14] Moreover, if successive trials were held and the first resulted in an acquittal, the second trial would present essentially the same collateral estoppel problem which appellant raises now. The latter alternative of calling for a jury trial upon all of the charges not only would be undesirable in that it would usurp the trial court's traditional authority over minor regulatory offenses, but it also would contravene the specific statutory

316 A.2d at 874. In the case at bar, we are confronted with the somewhat different context of criminal adjudication. While the sound administration of justice and the spirit of *Ashe v. Swenson* support the consolidation, where feasible, of all related charges for trial in a single proceeding, there also are sound policy justifications for the preservation of the trial court's traditional nonjury authority over

the adjudication of minor regulatory violations.

13. *See United States v. Wilder, supra* note 6.

14. Both local and federal rules liberally encourage the joinder of parties and charges in a single trial. *See* Super.Ct.Cr.R. 8 and 13 (and the correspondingly numbered federal rules). *See also* Super.Ct.Cr.R. 14; D.C. Code 1973, § 23–101(e).

command that minor offenses shall be tried by a judge rather than before a jury. D. C.Code 1973, § 16–705(b). Where, as here, the accused is required to "run the gantlet" but once for all of the related charges, we are of the opinion that there is insufficient justification to warrant the abrogation of long-established procedures. Application of the collateral estoppel doctrine to the concurrent adjudication of criminal charges by judge and jury is neither required nor justified.

■■■ The possibility that the two different triers may occasionally produce inconsistent results is not a controlling factor. In the first place, there is no basis for assuming that a division of adjudicatory responsibilities between judge and jury will result in a greater incidence of such anomalies than presently accrues from the submission of multiple charges to a single trier. The law long has held inconsistent verdicts by a single jury upon multicount indictments to be unexceptionable.[15] *See Dunn v. United States,* 284 U.S. 390, 52 S. Ct. 189, 76 L.Ed. 356 (1932); *United States v. Fox,* 140 U.S.App.D.C. 129, 132 n.21, 433 F.2d 1235, 1238 n.21 (1970); *Barnes v. United States,* D.C.App., 254 A. 2d 724 (1969); *United States v. Robinson,* 154 U.S.App.D.C. 265, 272, 475 F.2d 376, 383 (1973); Annot. 18 A.L.R.3d 259 (1968). *See also United States v. Smith, supra.* The emergence of the collateral estoppel doctrine has not changed this rule.[16] We concur in the following belief:

[W]e do not understand *Ashe v. Swenson . . .* to mean that one tried for two different but interrelated offenses at the same time must be convicted of both for a conviction of either to stand. [*United States v. Fox, supra* at 132 n.22, 433 F.2d at 1238 n.22 (citation omitted).]

Furthermore, except in a minority of jurisdictions,[17] this same deference has been accorded to inconsistent results in a nonjury trial. *See* Annot. 18 A.L.R.3d 259, § 6 at 284. We see no reason why a standard of rationality and consistency demanded of neither a judge nor a jury when performing as a single trier should be required when they act in concert. *See generally* 2 Wright, Federal Practice and Procedure § 514 (1969).

In summary, we conclude that the collateral estoppel principles of *Ashe v. Swenson* need not be extended to the instant adjudicatory procedures, and hold that the jury's acquittal of appellant on the charge under § 22–3204 did not preclude a concurrent finding of guilt by the trial court as to the two regulatory offenses.

### III

■■■ Appellant also contends that he was deprived of his due process rights by the very nature of the concurrent adjudication of all three charges against him. We note that there is no indication in the record that appellant made any attempt to raise a timely objection to the split nature of his trial.[18] Appellant nevertheless now

---

15. In a criminal trial there is no requirement of rational results, for "the jury has the power to bring in a verdict in the teeth of both law and facts." *Horning v. District of Columbia,* 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920).

16. We do not share Chief Judge Bazelon's reservations concerning the continued validity of *Dunn v. United States* in light of *Ashe v. Swenson. Compare United States v. Fox, supra* at 133, 433 F.2d at 1239 (Bazelon, C. J., concurring) *with United States v. Greene,* 497 F.2d 1068, 1085–86 (7th Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975).

17. *See, e. g., United States v. Maybury,* 274 F.2d 899 (2d Cir. 1960).

18. Where, as here, the alleged prejudice inherent in the consolidated proceeding would have been apparent before commencement of the trial, absent a timely objection by the accused, the point is lost on appeal. *See Bell v. United States,* D.C.App., 332 A.2d 351 (1975); *United States v. Scott,* 150 U.S.App. D.C. 323, 324, 464 F.2d 832, 833 (1972); *Young v. United States,* 109 U.S.App.D.C. 414, 288 F.2d 398 (1961), *cert. denied,* 372 U.S. 919, 83 S.Ct. 734, 9 L.Ed.2d 725 (1963). *Cf.* Super.Ct.Cr.R. 14. The scope of our review therefore is limited to plain error. *See Adams v. United States,* D.C.App., 302 A.2d 232 (1973). *See also In re J. A. H.,* D.C. App., 315 A.2d 825, 827 (1974).

contends that the disputed procedure rendered his defense "more complex", and prejudiced him by the inherent exposure of each trier to evidence of extrinsic wrongdoing. He has not, however, directed us to evidence of any such detriment in the record, and we find none. Given the similarity of the operative facts underlying the three charges, it is difficult to perceive how their bifurcated resolution would tax his defense efforts. There was no mention to the jury of the fact that appellant also had been charged with the regulatory offenses, and the court properly instructed the jury to disregard the evidence concerning the ammunition.

Appellant relies on a single New York motor vehicle case in which a county court concluded that the simultaneous trial of two of the charges to the magistrate and the other three to a jury was impermissibly prejudicial. *People v. Konopka*, 5 Misc.2d 507, 164 N.Y.S.2d 139 (1957). There, however, the jury was expressly confronted with the fact that the accused had been charged with offenses other than those upon which they were to determine guilt.

The due process implications of the simultaneous adjudication of several charges against a single defendant before separate triers have not been considered by this court or by any federal circuit court of appeals. While it is true that the Supreme Court has rejected the Due Process Clause as a constitutional basis for the collateral estoppel issues ultimately resolved under the Fifth Amendment in *Ashe v. Swenson*,[19] certainly the procedure under review nevertheless must conform to the general requirement of fairness which underlies the constitutional guarantee. *See Palko v. Connecticut*, 302 U.S. 319, 325–28, 58 S.Ct. 149, 82 L.Ed. 288 (1937). We conclude that the mandate of fundamental fairness has been satisfied.

Nor are we persuaded that a different result is required by the mere uniqueness of the disputed procedure. In *Sidman v. United States, supra*, the simultaneous trial of two codefendants before separate juries was upheld. There the court determined that where it has been shown that the trial was fairly conducted and the juries were properly instructed, such nontraditional procedures may be sustained.[20] 470 F.2d at 1168. We agree. Where, as was true here, the trial court is careful to exclude any reference to the existence of extrinsic charges, and the jurors are properly guided as to the nature of their responsibilities and the evidence which they may consider, we find no due process impediment.

There being no error calling for reversal, the judgments appealed from are affirmed.

*Affirmed.*

---

19. *Hoag v. New Jersey*, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958).

20. In *Sidman*, the Ninth Circuit was careful to note that "our holding is not to be read as an endorsement of the [two juries] 'experiment' that was carried out in this case." 470 F.2d at 1170.