**[J-37-2021]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 31 WAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered August 3, |
| | : | 2020 at No. 1596 WDA 2018 |
| v. | : | affirming the Judgment of Sentence |
| | : | of the Court of Common Pleas of |
| | : | Allegheny County entered October |
| GREGORY JORDAN, | : | 10, 2018 at No. CP-02-CR- |
| | : | 0012031-2018. |
| Appellant | : | |
| | : | ARGUED:  May 18, 2021 |

<u>**OPINION**</u>

**JUSTICE DOUGHERTY**                    **DECIDED:  AUGUST 17, 2021**

We consider whether inconsistent verdicts rendered by separate factfinders in a simultaneous jury and bench trial implicate double jeopardy and collateral estoppel concerns, such that a defendant, who was acquitted by the jury on the charges it considered, may not also be found guilty by the trial court of other charges.  We conclude that a defendant who elects to proceed with a simultaneous jury and bench trial during a single prosecution is subjected to only one trial and therefore double jeopardy and collateral estoppel do not apply to preclude the guilty verdict rendered by the judge.

# I. Background

Appellant Gregory Jordan was arrested for his alleged participation in the robbery of Tishana Nowlin on St. Joseph Street in the Mount Oliver neighborhood of Pittsburgh.[1] He was charged at docket number 2017-1702 with criminal attempt - homicide, robbery, aggravated assault, criminal conspiracy, persons not to possess a firearm, carrying a firearm without a license, terroristic threats, theft by unlawful taking, and disorderly conduct.[2] At appellant's request, the persons not to possess a firearm charge was severed and charged at docket number 2018-12031.[3] On October 1, 2018, at appellant's request, the parties proceeded to a simultaneous jury and bench trial where the court sat as factfinder for the persons not to possess a firearm charge at 2018-12031 and the disorderly conduct offense at 2017-1702, and the jury served as factfinder for all remaining charges. *See* N.T., 10/10/18 at 4 (appellant's counsel confirming "[Appellant] and I did discuss the now severed charges and that we would want to proceed nonjury on those charges. We discussed that before we began jury selection. I had submitted a motion to sever in writing before we began.").

At trial, Nowlin testified before the jury that she was robbed at gunpoint by two men as she returned home from work on January 16, 2017. *See* N.T., 10/1/18 at 149-50. She further testified one of the men, whom she later identified as appellant, "pulled out this

---

[1] Appellant was also charged with various crimes related to the robbery of Tim Harris at the same location two weeks earlier. The cases were tried together, but the charges in the Harris robbery are not relevant to this appeal.

[2] The Commonwealth *nolle prossed* the theft by unlawful taking charge before trial and later withdrew the attempted homicide and aggravated assault charges during the charging conference. *See* Trial Court Op., 5/16/19 at 2, 3 n.1. The court also granted appellant's motion for judgment of acquittal as to the charge of carrying a firearm without a license. *See id.* at 3 n.1.

[3] In order to be convicted of persons not to possess a firearm, the Commonwealth must prove the individual possessed a gun and has been convicted of certain enumerated offenses. *See* 18 Pa.C.S. §6105.

extremely big gun" and said "you know what this is" as the other man searched her pockets. *Id.* at 150-51; *see id.* at 154-55. She indicated the men took her wallet and keys, and ran down St. Joseph Street and entered a brown house. She explained that, as she ran after the men, appellant turned back toward her and said something; however, she was unable to recall what he said. She stopped chasing the men when they entered the house and she called the police. The police arrived and surrounded the house before entering and discovering nobody inside. Nowlin later went to the police station to review a photographic array of suspects at which time she positively identified appellant as one of the men without hesitation. *See id.* at 227. She also testified that she had never seen appellant before the robbery. After the jury was dismissed, the Commonwealth presented evidence of appellant's prior criminal record in support of the persons not to possess a firearm charge.

At the conclusion of trial, the jury found appellant not guilty of robbery, conspiracy, and terroristic threats — the only charges it considered. The court indicated it reached its verdict at the same time as the jury, but wanted additional time to conduct legal research and confirm its belief that it was free to render its own factual findings, even if those findings were inconsistent with the jury's verdict. *See* N.T., 10/10/18 at 11. On October 10, 2018, when proceedings resumed, the court and parties recognized a jury waiver colloquy had not yet been placed on the record. *See id.* at 2 (court acknowledging it received a request to try the persons not to possess charge non-jury but appellant "never submitted a non-jury colloquy" and the court "never colloquied [appellant] on his right to a jury versus a nonjury trial"). Appellant's counsel suggested the court issue the colloquy: "Your Honor, I had advised him about [the waiver.] . . . I know it is no substitute for the colloquy, but [ ] perhaps, we could put on the record that [it] had been discussed previously." *Id.* Appellant and his attorney both stated on the record they had previously

discussed his right to have the severed charge heard by a jury, and appellant decided to proceed with a non-jury trial on that charge. *See id.* at 4 ("[Appellant] and I did discuss his right to have those charges tried by the jury, and all the other ways we could have proceeded. It was both of our decisions that it was proper to address [the severed charges] as a nonjury. That was discussed before we began. I did go over all the substantive rights in regard to that."); *see id.* at 4-5 (appellant informing the court he discussed his rights with counsel before trial). The court then issued a jury waiver colloquy and appellant waived his right to a jury trial on the remaining charges.

The court ruled it was not bound by the jury's verdict and found appellant guilty of disorderly conduct and persons not to possess a firearm.[4] The court expressly stated it found Nowlin "testified truthfully." *Id.* at 15. Appellant was immediately sentenced to 11 ½ to 23 months' incarceration followed by 3 years' probation. He filed a post-sentence motion arguing his conviction by the court for persons not to possess a firearm was barred by double jeopardy and collateral estoppel given the jury's acquittal on the other charges. The court denied appellant's motion, and he then filed a timely notice of appeal on the same basis.

In its Pa.R.A.P. 1925(a) Opinion, the trial court concluded neither double jeopardy nor collateral estoppel applied in the context of a single prosecution where a trial court and jury sit simultaneously as factfinders, even when the trial results in inconsistent verdicts. The court observed that both doctrines "operate to preclude 'subsequent' prosecutions and 'redeterminations' in a second prosecution 'of those issues necessarily determined between the parties in a first proceeding which has become a final judgment.'" Trial Court Op., 5/16/19 at 8-9, *quoting Commonwealth v. States*, 938 A.2d 1016, 1020

---

[4] Appellant's argument in this appeal focuses on his conviction for persons not to possess a firearm and does not mention his conviction for disorderly conduct.

(Pa. 2007). There was no subsequent prosecution here, according to the court, because the evidence was presented at a single trial and heard simultaneously by separate factfinders. *See id.* The court also dismissed concerns that a trial with two factfinders may result in inconsistent verdicts because "'the law is clear that inconsistent verdicts are permissible in Pennsylvania.'" *Id.* at 9, *quoting States*, 938 A.2d at 1025. Moreover, the court emphasized that the "'trial court is not required to defer to the findings of the jury on common factual issues.'" *Id.* at 10-11 (emphasis omitted), *quoting Commonwealth v. Wharton*, 594 A.2d 696, 699 (Pa. Super. 1991) (relying on *Commonwealth v. Yachymiak*, 505 A.2d 1024 (Pa. Super. 1986)). The court concluded:

> [T]his court was not bound by the jury's factual findings in the simultaneous joint trial. This court was acting as an independent fact-finder with respect to the two [ ] charges that were being tried simultaneously with the offenses that were tried before the jury. In discharging its fact-finding duty, the court was not just permitted, but rather was required, to make its own credibility determinations and factual findings based on its own assessment of the evidence . . . that was presented during the same prosecution.

*Id.* at 11 (emphasis omitted).

A unanimous three-judge Superior Court panel affirmed appellant's conviction in an unpublished memorandum opinion. The panel explained double jeopardy, which ensures no person "be twice put in jeopardy of life or limb" for the same offense, U.S. CONST. amend. V; PA. CONST. art. I, §10, provides "'freedom from the harassment of successive trials and the prohibition against double punishment.'" *Commonwealth v. Jordan*, 1596 WDA 2018, 2020 WL 4436287 at *3 (Pa. Super. Aug. 3, 2020) (unpublished memorandum), *quoting States*, 938 A.2d at 1019 (internal quotation and citation omitted). Similarly, the panel observed criminal collateral estoppel is a "'subpart of double jeopardy protection[.]'" *Id.*, *quoting States*, 938 A.2d at 1020. The panel viewed this case as one "involv[ing] an inconsistent verdict" — as opposed to collateral estoppel — because there was a single simultaneous jury and bench trial and no subsequent prosecution. *Id.* at *4.

The panel acknowledged simultaneous trials may result in inconsistent verdicts, but emphasized that such verdicts are permissible in Pennsylvania. *See id.*, *quoting Commonwealth v. Petteway*, 847 A.2d 713, 718 (Pa. Super. 2004) (inconsistent verdicts "while often perplexing, are not considered mistakes and do not constitute a basis for reversal."). The panel thus agreed with the trial court's analysis and concluded where "a simultaneous jury/bench trial is conducted and the defendant is not subjected to a subsequent trial following an acquittal, the trial court is not bound by the jury's credibility determinations and may make findings different from and inconsistent with the jury's findings." *Id.* at *5, *citing Wharton*, 594 A.2d at 699 and *Yachymiak*, 505 A.2d at 1027.

We granted discretionary review to consider: "Whether the Superior Court panel erred as a matter of law in concluding that inconsistent verdicts are always permissible in consolidated jury/bench trials pursuant to [*Yachymiak*] and [*Wharton*], particularly where a different panel of the Superior Court reached the exact opposite conclusion in *Commonwealth v. Rankin*, 235 A.3d 373 (Pa. Super. 2020)?" *Commonwealth v. Jordan*, 241 A.3d 1092 (Pa. 2020) (*per curiam*).

## II. Relevant Authorities

We preface the parties' arguments with a discussion of the relevant jurisprudence. In *Ashe v. Swenson*, 397 U.S. 436 (1970), the United States Supreme Court first held criminal collateral estoppel is "embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe*, 397 U.S. at 445. Ashe was one of four masked men who robbed six others who were playing poker. He was individually tried for the robbery of one poker player and was found not guilty by a jury based on insufficient identification evidence. Six weeks later, Ashe was tried for the robbery of another poker player, and this time he was convicted because the identification evidence was stronger than it was at the first trial.

*See id.* at 439-40. Ashe challenged his conviction on double jeopardy and collateral estoppel grounds. The High Court explained:

> [T]he rule of collateral estoppel in criminal cases is not to be applied with [a] hypertechnical and archaic approach . . . but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

*Id.* at 444 (internal quotations, citation, and footnotes omitted). The *Ashe* Court then concluded Ashe's second prosecution, following the jury's acquittal, was "wholly impermissible" because the "single rationally conceivable issue in dispute before the jury was whether [Ashe] had been one of the robbers." *Id.* at 445.

In *States*, this Court considered criminal collateral estoppel in the context of a simultaneous jury and bench trial. States was involved in a single vehicle accident that resulted in the death of two others riding in the car. States was charged with, *inter alia*, homicide by vehicle, driving under the influence of alcohol, and accidents involving death or personal injury while not properly licensed. States moved to sever the accidents involving death charge because he feared he would be prejudiced when the jury learned he did not hold a valid driver's license. The parties then agreed to a simultaneous jury and bench trial with the court determining the accidents involving death charge, and the jury deciding the remaining charges.

The jury trial resulted in a mistrial due to a hung jury, and, on the same day, the trial court acquitted States because it was not convinced beyond a reasonable doubt that he was the driver of the vehicle. States sought to prevent the Commonwealth from

retrying him based on double jeopardy and collateral estoppel. He argued the trial court's finding he was not the driver of the vehicle precluded further litigation of that issue. This Court agreed, concluding "[t]he record is clear that the trial court based its verdict on its finding that the Commonwealth failed to prove beyond a reasonable doubt that States was the driver of the car[,]" *States*, 938 A.2d at 1022, and thus a retrial would require the Commonwealth to "present evidence on an issue that has already been decided in States'[s] favor." *Id.* at 1027. In so doing, we noted a simultaneous jury and bench trial is an "unusual trial procedure[,]" *id.* at 1024, and observed the District of Columbia Circuit Court of Appeals declined to apply *Ashe*'s criminal collateral estoppel principles where "'several criminal charges against the same defendant have been allocated between two triers for concurrent adjudication[.]'" *Id.* at 1025, *quoting Copening v. United States*, 353 A.2d 305, 312-13 (D.C. Cir. 1976). Although we considered *Copening*'s rationale to be "logical" we noted that case "did not involve a hung jury and the prospect of a retrial[,]" and thus was distinguishable. *Id.*

In *Yachymiak*, the defendant had a simultaneous jury and bench trial where a jury served as the factfinder for a DUI-related misdemeanor charge and the court was the factfinder for various summary offenses. At trial, Yachymiak offered evidence to prove his wife was driving the vehicle. Apparently crediting that testimony, the jury acquitted Yachymiak; however, the trial court convicted him of the summary offenses. Yachymiak challenged the validity of the inconsistent verdicts, but the Superior Court rejected that claim concluding inconsistent verdicts are permissible in Pennsylvania and thus "are not grounds for a new trial or for reversal." *Yachymiak*, 505 A.2d at 1026 (citation omitted). In addition to the difficulty of determining when verdicts are truly inconsistent, the panel feared that if a judge were required to defer to a jury's factual findings, a judge's designation as trier of fact — pursuant to the then-applicable Pennsylvania Rules of

Criminal Procedure — would be essentially abrogated. *See id.* at 1027, *citing* Former Pa.R.Crim.P. 1102(a) (when a defendant waives the right to a jury trial "the trial judge shall determine all questions of law and fact and render a verdict which shall have the same force and effect as a verdict of a jury"). Despite the "paradoxical result[ ]" of the inconsistent verdicts, the panel concluded the trial court did not err by performing its role as fact finder.

A subsequent panel of the Superior Court relied on *Yachymiak* in *Wharton*. Wharton faced trial for DUI-related offenses where a jury sat as factfinder for felony and misdemeanor charges and the trial court was the factfinder for summary charges. At trial, Wharton argued he was not the driver of the vehicle, and the jury — apparently crediting that testimony — acquitted him. Days later, after receiving additional evidence of Wharton's driving record and vehicle registration, the court convicted Wharton of the summary offenses. On appeal, Wharton argued the delay between the jury and bench portions of his trial effectively created two proceedings, thus violating his protection from double jeopardy. The *Wharton* panel rejected this argument concluding "[j]eopardy attached simultaneously on all alleged offenses at the start of the trial, and the delay in receiving evidence . . . in order to prevent the jury from hearing [irrelevant] evidence" did not result in two trials. *Wharton*, 594 A.2d at 699. Moreover, the panel concluded inconsistent verdicts were permissible because "as [*Yachymiak*] instructs, in a consolidated jury/nonjury trial, the trial court is not required to defer to the findings of the jury on common factual issues." *Id.*

A different Superior Court panel distinguished *Yachymiak* and *Wharton* in *Rankin*. Rankin had a simultaneous jury and bench trial where the jury served as factfinder for a charge of fleeing or attempting to elude police and the trial court was the factfinder for three summary motor vehicle code violations. At trial, the parties focused on the identity

of the driver of the fleeing vehicle. The jury acquitted defendant of the lone charge before it, but the trial court convicted him of the three summary offenses. The defendant appealed, arguing the trial court's verdict violated double jeopardy and criminal collateral estoppel because the jury's acquittal on the fleeing charge "established, or necessarily implied" that he was not the driver of the vehicle. *Rankin*, 235 A.3d at 378 (internal quotation and citation omitted). A Superior Court panel agreed, concluding "the only issue upon which the jury could have rationally relied in acquitting [Rankin] was his identity as the driver[,]" and thus collateral estoppel prevented the trial court from "simply disagreeing" with the jury's conclusion on that issue. *Id.* at 384-85, 387. In doing so, the panel distinguished *Yachymiak* — on the basis that the identity of the driver in that case was not the sole factual issue on which the jury's acquittal could have been predicated — and *Wharton* — due to its purported focus on the impact of a delay between the jury and bench portions of a simultaneous jury/judge trial — and determined "it is plain from the record that a rational jury did not acquit [Rankin] on any ground aside from identity." *Id.* at 387. The *Rankin* panel reasoned its holding was consistent with *Ashe*'s goal of applying the collateral estoppel doctrine with "realism and rationality[,]" after a thorough examination of the record. *Id.* at 379.

### III. Parties' Arguments

Appellant argues, based on *Ashe* and *States*, that criminal collateral estoppel bars his conviction for persons not to possess a firearm because the issue of Nowlin's credibility was previously litigated and decided by the jury. He explains that criminal collateral estoppel is incorporated in the Fifth Amendment's guarantee against double jeopardy and "'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" Appellant's Brief at 33, *quoting Ashe*, 397 U.S.

at 443. Appellant maintains that *States* supports application of collateral estoppel "[n]otwithstanding the procedurally unique situation created by" a simultaneous jury and bench trial. *Id.* at 37-38. *See also id.* (emphasizing *States* Court took no position on *Copening*'s holding collateral estoppel does not apply in simultaneous jury and bench trials as case was distinguishable from *States*).

Appellant asserts this Court must determine whether the issue was: (1) "sufficiently similar and sufficiently material in both actions[;]" (2) "litigated in the first case[;]" and (3) "necessarily decided in the first case." *Id.* at 36-37 (internal quotations omitted); *see id.* at 37, *quoting States*, 938 A.2d at 1022 n.7 ("the *Ashe* collateral estoppel rule applies whenever a verdict establishes or 'necessarily implies' a factual finding in the defendant's favor") (citation omitted). He urges this Court to apply the doctrine with "'realism and rationality'" and to "'examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *Id.* at 35, *quoting Ashe*, 397 U.S. at 444 (internal quotation omitted). According to appellant, an analysis of these factors reveals the only issue of fact for the jury to decide was whether Nowlin's testimony was credible, and the jury clearly found she was not credible when it acquitted him. *See id.* at 39; *see also id.* at 46 ("the jury's prior acquittals established, or necessarily implied, a factual finding in [appellant]'s favor that he had done nothing criminal, including possess a firearm"). Appellant maintains the trial court "was collaterally estopped" from subsequently convicting him of persons not to possess firearms based on the same evidence. *Id.* at 46.

Appellant admits a "perceived hiccup" in this case is the nature of the consolidated jury and bench trial, and whether it accurately can be characterized as two separate

proceedings; he insists it can. *Id.* at 40. Appellant explains he "did not have a consolidated jury/bench trial[; r]ather, he had a jury trial on the felony and misdemeanor charges, **after** which he had a separate bench trial on the severed charge of [p]ersons [n]ot to [p]ossess [f]irearms[.]" *Id.* at 46 (emphasis in original). "There were two separate actions here[,]" according to appellant, because he "did not formally waive his right to a jury trial on the charge of [p]ersons [n]ot to [p]ossess [f]irearms until after the jury trial had already concluded, and the jury had already rendered its not guilty verdicts."[5] *Id.* at 40-41, 46 (emphasis omitted); *see id.* at 45 ("the salient fact remains that the trial court did not conduct [appellant]'s oral jury waiver colloquy, or receive his written jury waiver form," with regard to the persons not to possess firearms charge "until after the jury trial on the other charges had already concluded, and the jury had already rendered its not guilty verdicts"). Appellant argues the jury waiver colloquy is a "substantive first step[,]" *id.* at 45, required to initiate the non-jury trial portion of the simultaneous trial. *See Commonwealth v. Dowling*, 959 A.2d 910, 915 (Pa. 2008) (trial begins when there is a "substantive first step[,]" *i.e.* when the court hears motions reserved for trial or when oral arguments commence, and thereafter a jury trial waiver may be not withdrawn pursuant to Pa.R.Crim.P. 621).

In any event, appellant argues "criminal collateral estoppel can and should apply with[in] the same trial." Appellant's Brief at 47. He observes the *Rankin* panel "did not view the mere fact that Rankin had a consolidated jury/bench trial as fatal to its application" of criminal collateral estoppel, but instead applied the doctrine with "'realism and rationality'" by focusing on the identity of the issue and whether it was already litigated

---

[5] Appellant nevertheless concedes "[t]here is no doubt that the parties intended for [appellant]'s case to be handled as a consolidated jury/bench trial." Appellant's Brief at 40. *See id.* at 42 ("the voluntariness of the jury trial waiver is not at issue[, appellant] (as well as the Commonwealth) clearly wanted a bench trial on the charge of [p]ersons [n]ot to [p]ossess [f]irearms").

and decided in the defendant's favor. *Id.* at 48, *quoting Rankin*, 235 A.3d at 379 (internal quotations and citation omitted). Appellant further argues he does not need to be subjected to multiple prosecutions for estoppel to apply because criminal collateral estoppel is rooted in due process, and notions of fundamental fairness should be the paramount consideration when deciding whether to apply the doctrine. *See id.* at 55-56; *see also id.* at 55, *quoting* Charles William Hendricks, *100 Years of Double Jeopardy Erosion: Criminal Collateral Estoppel Made Extinct*, 48 Drake L. Rev. 379, 402 n.127 (2000) (*Ashe* held collateral estoppel is incorporated into the Double Jeopardy Clause, but not that it exists exclusively under that Clause). Moreover, appellant contends the more flexible due process approach is favorable because when criminal collateral estoppel was originally constitutionalized in the Fifth Amendment, "the procedurally unique phenomenon" of simultaneous jury and bench trials was virtually unknown. *Id.* at 56. Today, he asserts, such proceedings are commonplace, and therefore he urges this Court to adapt the law to allow criminal collateral estoppel to apply in such circumstances. *See id.* at 59. Finally, he recognizes Pennsylvania's tolerance for inconsistent verdicts, but claims they are appropriate only when rendered by a jury, and not by a judge. *See id.* at 63.

The Commonwealth observes "this was not a successive prosecution, but a single trial before two separate fact finders," and thus "the trial court was free to draw its own factual conclusions" notwithstanding the jury's credibility determinations. Commonwealth's Brief at 9. It explains the protection against double jeopardy — of which collateral estoppel is a subpart — is oriented toward "prevent[ing] the prosecution from honing its case through successive attempts at conviction that would unfairly burden the defendant and 'create a risk of conviction through sheer governmental perseverance." *Id.* at 11, *citing Commonwealth v. Gibbons*, 784 A.2d 776, 778 (Pa. 2001). The

Commonwealth asserts appellant's reliance on *States* is misplaced because it "'inolve[d] a hung jury and the prospect of a retrial'" and not "'merely whether the two fact finders could render their inconsistent verdicts, one after the other.'" *Id.* at 14 (emphasis omitted), *quoting States*, 938 A.2d at 1025. According to the Commonwealth, *Yachymiak* and *Wharton* control here because each involved a simultaneous jury and bench trial like the one appellant consented to in this case. "'That the court's verdict was not consistent with the jury's verdict . . . is not an adequate basis for granting relief,'" the Commonwealth argues, because "'the trial court is not required to defer to the findings of the jury on common factual issues.'" *Id.* at 20, *quoting Wharton*, 594 A.2d at 699.

The Commonwealth acknowledges "the trial court's failure to conduct the proper colloquy and obtain a valid jury trial waiver prior" to the beginning of the jury trial was "troubling[,]" but that potential error "does not change the character of the proceedings below — there was one joint trial below, not two. The trial court heard all the evidence related to its verdict simultaneously with the jury." *Id.* at 22.[6] The Commonwealth also rejects appellant's argument that inconsistent verdicts offend logic and reason because the law has long permitted inconsistent verdicts, and thus "condones illogical and internally inconsistent results." *Id.* at 23. The Commonwealth explains that although the factfinders arrived at "diametrically opposite conclusions" each "made a valid and logical conclusion in rendering its verdict based upon its own independent finding[s] of fact[ ]." *Id.* at 24-25. In the Commonwealth's view, "appellant is really asking this Court to . . . award primacy to the jury over a judge when it comes to ruling on issues of fact[,]" and such a request ignores the role of a trial judge when a defendant elects to waive his right

---

[6] The Commonwealth maintains that appellant waived any challenge to the court's failure to colloquy him at the outset of the jury trial for failure to raise it below. Commonwealth's Brief at 22. In his reply brief, appellant asserts he raised this issue in the Superior Court, and in any event, it is fairly subsumed in the question presented on appeal. *See* Appellant's Reply Brief at 3-5.

to a jury trial. *Id.* at 25. Moreover, the Commonwealth asserts the role of the jury is not undermined by the trial court's independent ruling because appellant "received the benefit of the jury's verdict[.]" *Id.* at 26. Finally, the Commonwealth contends that *Rankin* was wrongly decided because it conflicts with *Yachymiak* and *Wharton*, and "failed to recognize the trial court's right as finder of fact to make its own determinations regarding credibility and facts[.]" *Id.* at 27.

The Pennsylvania District Attorneys Association (PDAA) filed an *amicus curiae* brief in support of the Commonwealth. *Amicus* draws our attention to *Currier v. Virginia*, __ U.S. __, 138 S.Ct. 2144 (2018). Currier consented to a bifurcated trial where his burglary and larceny charges were heard by a jury, and the remaining felon-in-possession of a firearm charge was heard by a different jury at a separate trial. At the first trial, Currier was acquitted, and before the second trial began, he challenged the validity of the second trial on double jeopardy grounds. The High Court concluded double jeopardy was not implicated because "consenting to two trials when one would have avoided a double jeopardy problem precludes any constitutional violation associated with holding a second trial." *Currier*, 138 S.Ct. at 2151. *Amicus* contends appellant similarly consented to a simultaneous jury and bench trial and thus "was aware that the jury was to decide his fate on some of the charges while the trial judge would consider the persons not to possess firearms charge." PDAA's Brief at 18. Finally, *amicus* argues a plurality in *Currier* "raised some doubts about" *Ashe*'s continued viability and explicitly sought to narrow its application to circumstances where a defendant can prove "'an identity of statutory elements between the two charges against him[.]'" *Id.* at 25-26, *quoting Currier*, 138 S.Ct. at 2153 (emphasis omitted); *see Currier*, 138 S.Ct. at 2153 ("a court's ultimate focus remains on the practical identity of offenses, and the only available remedy is the

traditional double jeopardy bar against the retrial of the same offense — not a bar against the relitigation of issues or evidence.").

## IV. Analysis

We are asked to consider whether the panel's decision to uphold an inconsistent verdict in a simultaneous jury and bench trial — based on *Yachymiak* and *Wharton* — infringed on appellant's protection from double jeopardy. Applicability of these doctrines raises questions of law over which our standard of review is *de novo*. *See States*, 938 A.2d at 1019.

The outcome of this case is controlled by the simple fact that appellant had only one trial, arising from a single prosecution. Appellant emphasizes that both his case and *States* involved a simultaneous jury and bench trial, but the emphasis is misplaced. In *States* the jury portion of the trial ended in a mistrial and thereafter the court acquitted States on the remaining charges. The operative issue on appeal did not relate to the trial court's acquittal in the simultaneous trial, but rather to the Commonwealth's attempt to retry States in a second prosecution after the trial court acquitted him. *See States*, 938 A.2d at 1027 ("We hold that in light of the trial court's definitive finding that the Commonwealth failed to prove that States was the driver of the car, State'[s] federal constitutional rights prohibit the Commonwealth from attempting to convince a second jury otherwise."); *id.* ("[T]he mere fact of a simultaneous jury/bench trial does not necessarily result in the circumstances we found troubling in this case. Indeed, it is the hung jury, the accompanying acquittal, and the attendant necessity of a retrial . . . that make this case different."). The *States* Court distinguished the simultaneous jury and bench trial situation from a retrial following a hung jury and an acquittal; in the latter scenario, the Commonwealth would be required to present evidence on an issue already decided in States's favor. The Court noted: "The same would not be true in the case of

a 'garden variety' jury/bench trial at which two fact finders render their verdicts one after the other." *Id.* Thus, the salient fact separating *States* from "garden variety" cases — like this one — was the subsequent prosecution.

Here, the record makes clear that appellant had only one trial arising from the same prosecution on multiple charges. Appellant agreed to have the trial court sit as trier of fact for the persons not to possess a firearm charge, while the jury would find facts and render its verdict on the remaining charges. The evidence relating to appellant's involvement in the robbery and possession of the gun was heard simultaneously by both factfinders. After the jury was dismissed, and consistent with appellant's request to sever the persons not to possess firearms charge, the court received evidence on appellant's prior criminal history, as it related to this final charge in the same case. No new prosecution commenced, and as such, this case is most analogous to *Yachymiak*, *Wharton*, and *Copening*, where severed charges within the same criminal prosecution were considered by two separate factfinders. *See States*, 938 A.2d at 1025 ("While the *Copening* court's rationale is logical . . . it still would not control the circumstances of this case" because it "did not involve a hung jury and the prospect of a retrial."); *id.* at 1024 ("[t]he Superior Court [ — in *Yachymiak* and *Wharton* — ] has addressed the effect of joint jury/bench trials in a context slightly different from the one here"). The *Copening* Court's discussion of the interplay between a simultaneous trial and double jeopardy principles is particularly apt in these circumstances:

> Properly viewed, the issue before us is not the applicability of constitutional restrictions upon successive prosecutions, but rather whether the collateral estoppel principles enunciated in [*Ashe*] (and its progeny) should be extended to govern the procedurally unique situation in which several criminal charges against the same defendant have been allocated between two triers for concurrent adjudication upon virtually identical evidence. We conclude that they should not.

*          *          *

> We do not understand [*Ashe*] . . . to mean . . . that one tried for two different but interrelated offenses at the same time must be convicted of either to stand.

*Copening*, 353 A.2d at 312-13. Moreover, *Copening*'s reasoning is consistent with *Yachymiak* and *Wharton,* where the Superior Court considered the operative question to be whether a simultaneous jury and bench trial can result in inconsistent verdicts, and not whether double jeopardy principles were violated. *See Wharton*, 594 A.2d at 699 (charges were consolidated in single trial where jury was factfinder in the felony and misdemeanor charges and trial court was factfinder in summary charges; court was "not required to defer to the findings of the jury on common factual issues").

Appellant attempts to evade this analytical linchpin by arguing the belated jury waiver colloquy in this case somehow acted as a partition that divided his simultaneous jury/bench trial into two separate proceedings.[7] But our law does not support appellant's view. First, the applicable procedural rules are silent on when the colloquy must occur. *See* Pa.R.Crim.P. 620 ("The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record."). Additionally, our cases recognize the "colloquy is a procedural device; it is not a constitutional end or a constitutional 'right.' Citizens can waive their fundamental rights in the absence of a colloquy; indeed waivers can occur by conduct or by implication[.]" *Commonwealth v. Mallory*, 941 A.2d 686, 697 (Pa. 2008). In the present appeal, the court did not place the jury waiver colloquy on the record at the commencement of trial, but it is clear from the record that appellant and his counsel discussed and agreed to proceed

---

[7] We agree with the Commonwealth appellant waived any challenge to the validity of his jury trial waiver by not objecting to it at trial. *See* N.T., 10/10/18 at 2-5. But we disagree that he waived his claim that the **timing** of the waiver acted to separate the proceedings for purposes of his double jeopardy argument; we consider this particular issue to be fairly subsumed in the broader double jeopardy question. *See also* Appellant's Superior Court Brief at 8 n.5 (noting "[s]trictly speaking, [appellant] did not formally waive his right to a jury trial . . . until after the conclusion of the . . . jury trial").

with a simultaneous jury and bench trial at that time. *See* N.T., 10/10/18 at 2-5. Indeed, appellant concedes his jury waiver was valid, despite the fact a colloquy was formally placed on the record after his trial began and a partial verdict was rendered by the jury as to the charges under its consideration.

Appellant nevertheless invites us to elevate the colloquy from a procedural mechanism to a substantive one, the timing of which signaled the commencement of a second trial on those charges. We decline the invitation. The record is clear that appellant agreed at the start of trial — after consulting with counsel — to proceed with one simultaneous jury/bench trial arising from a single prosecution on multiple charges, where the jury would act as factfinder for certain of those charges, while the judge would consider others. The record is equally clear that appellant waived his right to a jury trial as to these latter charges. The decision was obviously (and properly) intended to benefit appellant strategically — as a result, the jury did not hear evidence of appellant's prior criminal record pertaining only to a charge considered by the trial court, *i.e.*, persons not to possess a firearm. Under these circumstances, we reject appellant's argument that the timing of the formal colloquy changed the nature of the proceedings from one trial arising from a single prosecution.[8]

---

[8] We also find unpersuasive appellant's alternative argument that, even without a second prosecution, collateral estoppel applies to bar his bench conviction. Appellant asserts this is because in addition to being constitutionalized in the double jeopardy clause, estoppel is rooted in due process, and thus should be applied with notions of fundamental fairness. This argument ignores *Ashe*'s decision to enshrine the doctrine within the double jeopardy clause in order to remove it from "the broad bounds of 'fundamental fairness[.]'" *Ashe*, 397 U.S. at 442-43; *see id.* at 445 (collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy"). And, since *Ashe*, federal courts and this Court have consistently applied criminal collateral estoppel as a "subpart" of double jeopardy that protects a defendant from being haled to court a second time to relitigate an issue already decided in his or her favor. *States*, 938 A.2d at 1020; *see, e.g.*, *id.* (criminal collateral estoppel "must be viewed through the lens of double jeopardy) (citation omitted); *Commonwealth v. Brown*, 469 A.2d 1371, 1373 (Pa. 1983) ("the federal

Accordingly, as appellant faced only one trial arising from a single prosecution on multiple charges, this case is more properly characterized as one involving inconsistent verdicts rather than one implicating double jeopardy. *See Jordan*, 2020 WL 4436287 at *4 ("[t]his case involved an inconsistent verdict"). Although inconsistent verdicts may run contrary to logic, we have nevertheless allowed and upheld them. *See, e.g.*, *Commonwealth v. Baker-Myers*, ___ A. 3d ___, 2021 WL 3073152 at *9 (Pa. filed July 21, 2021) (reaffirming "the longstanding principle permitting inconsistent verdicts"); *States*, 938 A.2d at 1025 ("the law is clear that inconsistent verdicts are permissible in Pennsylvania"); *Commonwealth v. Moore*, 103 A.3d 1240, 1247 (Pa. 2014) ("juries may reach inconsistent verdicts"). We hold this longstanding principle applies in the context of a simultaneous jury and bench trial, a hybrid proceeding that is clearly authorized under our rules. *See* Pa.R.Crim.P. 583 ("The court may order separate trials of offenses . . . or provide other appropriate relief, if it appears that any party may be prejudiced by offenses . . . being tried together."). Were we to adopt appellant's contrary position, the jury could usurp the trial court's proper role as the trier of fact in the bench portion of such proceedings. *See, e.g.*, Pa.R.Crim.R. 621(A) ("When a jury trial is waived, the trial judge shall determine all questions of law and fact and render a verdict which shall have the same force and effect as a verdict of a jury.").

---

constitutional protection against double jeopardy forbids the states from offending the collateral estoppel rule").

We also note criminal collateral estoppel would not apply in this context even if we credited appellant's position there were two proceedings here. Appellant, by electing to have a nonjury trial for his persons not to possess a firearms charge, effectively waived his estoppel claim under the federal Double Jeopardy clause. *See Currier*, 138 S.Ct. at 2150 ("If a defendant's consent to two trials can overcome concerns lying at the historic core of the Double Jeopardy Clause, so too we think it must overcome a double jeopardy complaint under *Ashe*."). Appellant did not preserve a double jeopardy challenge pursuant to the Pennsylvania Constitution, and we therefore do not opine on such a claim.

## V. Conclusion

For all the foregoing reasons, we affirm the order of the Superior Court.[9]

Chief Justice Baer and Justices Saylor, Todd, Donohue, Wecht and Mundy join the opinion.

---

[9] Given our holding, it is clear the *Rankin* panel improperly applied criminal collateral estoppel in the context of a simultaneous jury and bench trial, which we now recognize constitutes one trial arising from a single prosecution. We therefore disapprove of *Rankin* because it is at odds with the principles announced in *Yachymiak* and *Wharton*, and firmly adopted by this Court today.